WINDOM, Judge.
 
 [1]
 

 Kim Vanpelt
 
 [2]
 
 appeals his capital-murder conviction and sentence of death. Vanpelt was convicted of capital murder pursuant to § 13A-5-40-(a)(7), Ala.Code 1975, for murdering his wife, Sandra Marie Ozment Vanpelt, for pecuniary gain. By a vote of 10 to 2, the jury recommended that Vanpelt be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Vanpelt to death.
 

 The State’s evidence tended to show that on November 24, 2004, Jerry Evans discovered the nude body of Sandra Van-pelt on the side of County Road 53 near Hamilton. The medical examiner, Dr. Emily Ward, testified that Sandra died of “head injuries and suffocation.” Dr. Ward further testified that based on the undigested contents of her stomach, Sandra died within two hours of eating a meal that included mushrooms.
 

 Sandra and Vanpelt met after Sandra responded to Vanpelt’s personal ad on the Internet in the fall of 2004. At that time, Sandra lived in Phenix City and was working at a Shoney’s restaurant, and Vanpelt lived in Memphis, Tennessee, and was working in construction. After their relationship progressed, Sandra transferred to a Shoney’s restaurant in Muscle Shoals and moved to Tuscumbia so that she could be closer to Vanpelt. The two married on November 8, 2004, and lived in a mobile home in Tuscumbia.
 

 On November 2, 2004, Vanpelt contacted an insurance company about obtaining life insurance policies on himself and Sandra. Several of Sandra’s coworkers at Shoney’s restaurant testified that Vanpelt came into the restaurant on November 11, 2004, to have Sandra sign a life insurance application. Later that same day, three days after the two were married, Vanpelt submitted the policies and a check for the first month’s premiums to the insurance company. Vanpelt was the beneficiary of the $300,000 proceeds of Sandra’s insurance policy.
 

 On November 22, 2004, after the two had been married for approximately two weeks, Vanpelt filed a missing person’s report on his wife. He told police that she left to run errands around 9:00 a.m. on the morning of November 22, 2004, and did not return. Sometime later on the same day, Vanpelt went to a local Wal-Mart store and purchased candles, trash bags, a mop, and various cleaners. One cleaner named, “Zout oxy,” stated on the label that it could remove bloodstains.
 

 Police located Sandra’s Pontiac Grand Am automobile in the parking lot of an abandoned Winn-Dixie grocery store near the Vanpelts’ mobile home on November 23, 2004. Sandra’s clothes were in the trunk, and cigarette butts, which matched the brand Vanpelt smoked, were in the ashtray. Sandra’s body was discovered about 60 feet off a county road where it had been dumped.
 

 After Sandra’s body was discovered, police searched the Vanpelts’ mobile home. Police testified that the home was spotless. Roger Morrison, the laboratory director of the Huntsville Regional Laboratory for the Alabama Department of Forensic Sciences, testified that using a luminol spray he discovered blood in the master bedroom of
 
 *46
 
 the mobile home.
 
 [3]
 
 Luminol, he testified, would detect very “diluted bloodstains.” The blood matched Sandra’s blood. Police also found a picture of Sandra and the receipt for the cleaning materials in a garbage can inside the mobile home.
 

 Investigator Marc McCormick of the Alabama Bureau of Investigation testified that Vanpelt gave a statement to police. Vanpelt said that on the evening before his wife’s disappearance, he cooked dinner for her that included sauteed mushrooms. Vanpelt also told police that Sandra was at home Sunday night and that she left the mobile home Monday morning. This statement was inconsistent with the medical examiner’s testimony regarding the time of Sandra’s death.
 

 Three witnesses testified that Sandra’s white Pontiac automobile was not at the mobile home in the early morning hours of November 22, 2004. One witness, Ray McMahan, also testified that when he drove by the Vanpelts’ mobile home early that morning he saw a black Chevrolet truck backed up to the front door of the mobile home and a rug hanging over the railing. Vanpelt’s vehicle was a black Chevrolet truck.
 

 Evidence was also presented that while Vanpelt was incarcerated awaiting trial, he wrote to Edward Parson, a fellow inmate at the Colbert County jail, and asked Parson to assist him with a “mock” confession so that he could get out of jail. (C.R. 398.) Vanpelt wrote that he wanted Parson to handwrite the “mock” confession that Parson would compose and then have someone from the outside mail it to police.
 
 Id.
 
 He wrote that if the case was dismissed he would file a “malicious prosecution” action against the county. Vanpelt also wrote to Sandra Tucker, an inmate at the Lauder-dale County Detention Center, and said that he believed that her boyfriend was involved in a murder-for-hire plot with his wife and that Sandra had offered Tucker’s boyfriend money to kill Vanpelt.
 

 Patti Lawson, Vanpelt’s former fiancée, testified that she met Vanpelt in 2000 as a result of a personal ad she posted on the Internet; that her relationship with Van-pelt lasted for four years; that she was at one point engaged to him; and that the engagement ring Vanpelt gave her was the same ring he gave Sandra. Lawson could identify the ring, she said, because she designed its band. Lawson further stated that around the middle of October 2004, Vanpelt telephoned her and said that he wanted them to get back together. He sent her an airline ticket to Memphis, Tennessee — the ticket was dated October 29— 10 days before Vanpelt married Sandra. Lawson said that she did not use the ticket.
 

 The jury convicted Vanpelt of murdering Sandra for pecuniary gain. A separate sentencing hearing was held pursuant to § 13A-5-46, Ala.Code 1975. The State presented the testimony of several witnesses who testified about the impact of Sandra’s death in their lives. Vanpelt presented the testimony of two of his siblings — Brian Vanpelt and Dale Vanpelt. Brian testified that there were 8 siblings in the family, that he joined the Navy when he was 16 years old because “the situation at home had gotten so bad,” that their father was very abusive both physically, verbally, and mentally, that both of his parents were alcoholics, and that their father regularly beat their mother in front of them. Dale testified to similar childhood experiences. Vanpelt also presented the testimony of Dr. James Edward Crowder,
 
 *47
 
 a clinical psychologist. Dr. Crowder testified that he evaluated Vanpelt while he was in the Colbert County jail, that he performed an IQ test on Vanpelt, and that Vanpelt’s IQ was 120. He also testified that Vanpelt was from a very dysfunctional family and had an antisocial disorder. The jury recommended, by a vote of 10 to 2, that Vanpelt be sentenced to death.
 

 The circuit judge held a separate sentencing hearing according to § 13A-5-47, Ala.Code 1975, and found that the murder was committed for pecuniary gain, an aggravating circumstances defined in § 13A-5-49(6), Ala.Code 1975. The circuit court found one statutory mitigating circumstance, that Vanpelt had “no significant history of prior criminal activity.”
 
 See
 
 § 13A-5-51(l), Ala.Code 1975. The court also found as a nonstatutory mitigating circumstance that Vanpelt had a “difficult family history and that he ha[d] an antisocial personality.” After weighing the aggravating circumstance against the mitigating circumstances, the circuit court found that the aggravating circumstance outweighed the mitigating circumstances and sentenced Vanpelt to death.
 

 Standard of Review
 

 Because Vanpelt has been sentenced to death, according to Rule 45A, Ala. R.App. P., this court must search the record for “plain error.” Rule 45A states:
 

 “In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any
 
 plain error
 
 or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.”
 

 (Emphasis added.)
 

 In
 
 Ex parte Brown,
 
 11 So.3d 933 (Ala.2008), the Alabama Supreme Court explained:
 

 “ ‘ “To rise to the level of plain error, the claimed error must not only seriously affect a defendant’s ‘substantial rights,’ but it must also have an unfair prejudicial impact on the jury’s deliberations.” ’
 
 Ex parte Bryant,
 
 951 So.2d 724, 727 (Ala.2002) (quoting
 
 Hyde v. State,
 
 778 So.2d 199, 209 (Ala.Crim.App.1998)). In
 
 United States v. Young,
 
 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the United States Supreme Court, construing the federal plain-error rule, stated:
 

 “ ‘The Rule authorizes the Courts of Appeals to correct only “particularly egregious errors,”
 
 United States v. Frady,
 
 456 U.S. 152, 163 (1982), those errors that “seriously affect the fairness, integrity or public reputation of judicial proceedings,”
 
 United States v. Atkinson,
 
 297 U.S. [157], at 160 [ (1936) ]. In other words, the plain-error exception to the contemporaneous-objection rule is to be “used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.”
 
 United States v. Frady,
 
 456 U.S., at 163, n. 14.’
 

 “See also
 
 Ex parte Hodges,
 
 856 So.2d 936, 947-48 (Ala.2003) (recognizing that plain error exists only if failure to recognize the error would ‘seriously affect the fairness or integrity of the judicial proceedings,’ and that the plain-error doctrine is to be ‘used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result’ (internal quotation marks omitted)).”
 

 11 So.3d at 938. “The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal.”
 
 See Hall v. State,
 
 820 So.2d 113, 121-22 (Ala.
 
 *48
 
 Crim.App.1999). Although Vanpelt’s failure to object will not bar this Court from reviewing any issue, it will weigh against any claim of prejudice.
 
 See Dill v. State,
 
 600 So.2d 343, 352 (Ala.Crim.App.1991).
 

 Guilt-Phase Issues
 

 I.
 

 Vanpelt argues that the circuit court committed numerous errors during the jury-selection process. Initially, this court notes that “[o]ur statutes provide for examination of jurors as to ‘qualifications, interest, or bias’ and ‘any matter that might tend to affect their verdict.’ The scope of examination permitted is within the sound discretion of the trial judge.”
 
 Fletcher v. State,
 
 291 Ala. 67, 68-69, 277 So.2d 882, 883 (1973).
 
 See also Ex parte Land,
 
 678 So.2d 224 (Ala.1996). With these principles in mind, this court will address each of Vanpelt’s allegations individually.
 

 A.
 

 First, Vanpelt contends that the circuit court erred in removing prospective juror A.M.
 
 [4]
 
 for cause who, he argues, indicated that he could be impartial. Specifically, Vanpelt argues that A.M. was improperly removed for cause because, “while [A.M. stated that] he did harbor some resentment towards the police, he could listen to the facts and follow the judge’s instructions.” (Vanpelt’s Brief at 96.)
 

 During voir dire, prospective juror A.M. stated that he had previously been charged with driving under the influence. The following discussion then occurred:
 

 “[Prosecutor]: Let me ask you this, do you harbor or hold any ill will toward the State or the justice system in general because of these charges against you?
 

 “[A.M.]: (Nodding affirmatively.)
 

 “[PROSECUTOR]: What?
 

 “[A.M.]: For one of them, I do.
 

 “[PROSECUTOR]: Do you feel like you would hold that against the State of Alabama in the prosecution in the case the fact that this has happened to you?
 

 “[A.M.]: (Nodding affirmatively.)
 

 “[PROSECUTOR]: You think you would?
 

 “[A.M.]: Yes.
 

 “[PROSECUTOR]: Thank you, sir.
 

 “[DEFENSE COUNSEL]: I am sorry, I did not hear that last answer.
 

 “[PROSECUTOR]: He said he felt like he would hold that against the State of Alabama.
 

 “[DEFENSE COUNSEL]: Let me ask you this, regardless of this case, you feel like you were mistreated at one point in time in the past; am I correct in that?
 

 “[A.M.]: Yes, Sir.
 

 “[DEFENSE COUNSEL]: And I would expect you to continue to feel that way as long as you choose to do so. My question is this, ‘could you in this case set aside that?’ When I say ‘set aside,’ don’t mean during the trial of this case approve of what they did to you. But can you set aside any hurt feelings or any kind of sense of injustice towards you and can you listen to that judge and follow her instructions, listen to the facts and bring back a verdict in this case that you truly believe is right and fair based upon the laws and the facts, can you do that?
 

 “[A.M.]: I could listen to the facts, I can do what the judge tells me to do, but I’m always going to be impartial [sic], I can tell you that.
 

 
 *49
 
 “[DEFENSE COUNSEL]: In other words, you don’t like what they done to you?
 

 “[A.M.]: No.
 

 “[PROSECUTOR]: Every policeman that is going to testify on behalf of the State in this case, would you find it hard to give their testimony credit—
 

 “[A.M.]: Yes.
 

 “[Prosecutor]: Okay. Thank you, sir.”
 

 (R. 13£M1.) Later during voir dire examination, A.M. stated that he had previously been stabbed five times, that no one had been prosecuted for the offense, that the stabbing had occurred in Colbert County, and that he still harbored resentment toward police because they failed to make any arrest. (R. 175.) The State moved that juror A.M. be removed for cause, and the circuit court granted the motion. (R. 227.)
 

 When reviewing a circuit court’s ruling on a challenge for cause, we consider the following:
 

 “To justify a challenge for cause, there must be a proper statutory ground or ‘“some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court.” ’
 
 Clark v. State,
 
 621 So.2d 309, 321 (Ala.Cr.App.1992) (quoting
 
 Nettles v. State,
 
 435 So.2d 146, 149 (Ala.Cr.App.1983)). This Court has held that ‘once a juror indicates initially that he or she is biased or prejudiced or has deep-seated impressions’ about a case, the juror should be removed for cause.
 
 Knop v. McCain,
 
 561 So.2d 229, 234 (Ala.1989). The test to be applied in determining whether a juror should be removed for cause is whether the juror can eliminate the influence of his previous feelings and render a verdict according to the evidence and the law.
 
 Ex parte Taylor,
 
 666 So.2d 73, 82 (Ala.1995).... In order to justify disqualification, a juror ‘ “must have more than a bias, or fixed opinion, as to the guilt or innocence of the accused” ’; ‘ “[s]uch opinion must be so fixed ... that it would bias the verdict a juror would be required to render.” ’
 
 Oryang v. State,
 
 642 So.2d 979, 987 (Ala.Cr.App.1993) (quoting
 
 Siebert v. State,
 
 562 So.2d 586, 595 (Ala.Cr.App.1989)).”
 

 Ex parte Davis,
 
 718 So.2d 1166, 1171-72 (Ala.1998).
 
 See also Pressley v. State,
 
 770 So.2d 115, 127 (Ala.Crim.App.1999).
 

 “A trial judge’s finding on whether or not a particular juror is biased ‘is based upon determinations of demeanor and credibility that are peculiarly within a trial judge’s province.’
 
 [Wainwright v.] Witt,
 
 469 U.S. [412] at 429, 105 S.Ct. [844] at 855 [(1985)]. That finding must be accorded proper deference on appeal.
 
 Id.
 
 ‘A trial court’s rulings on challenges for cause based on bias [are] entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion.’
 
 Nobis v. State,
 
 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied,
 
 Ex parte Nobis,
 
 401 So.2d 204 (Ala.1981).”
 

 Martin v. State,
 
 548 So.2d 488, 490-91 (Ala.Crim.App.1988). “A trial judge is in a decidedly better position than an appellate court to assess the credibility of the jurors during voir dire questioning.
 
 See Ford v. State,
 
 628 So.2d 1068 (Ala.Crim.App.1993).”
 
 Turner v. State,
 
 924 So.2d 737, 754 (Ala.Crim.App.2002).
 

 A.M. unambiguously voiced his distrust and resentment toward police officers — the primary witnesses in the State’s case against Vanpelt. “If a ‘ “juror ... unquestionably credit[s] the testimony of law enforcement officers over that of [a] defense witness [that juror] is not competent to serve.” ’
 
 Uptain v. State,
 
 534 So.2d 686, 687 (Ala.Cr.App.1988), quoting
 
 State v. Davenport,
 
 445 So.2d 1190, 1193-94 (La.
 
 *50
 
 1984).”
 
 McCray v. State,
 
 629 So.2d 729, 733 (Ala.Crim.App.1993). Likewise, the converse is true, if a juror would disregard a police officer’s testimony then he is incompetent to serve. “ ‘Bias toward a certain kind of evidence is a manifestation of a predisposition against guilt or innocence because of a reason extrinsic to the evidence.’ ”
 
 Watwood v. State,
 
 389 So.2d 549, 550 (Ala.Crim.App.1980) (quoting
 
 Poore v. State,
 
 39 Md.App. 44, 384 A.2d 103, 120 (1978)).
 

 Because prospective juror A.M. stated that he would discredit testimony from police officers, the circuit court did not abuse its considerable discretion in granting the State’s motion to remove prospective juror A.M. for cause. Therefore, this claim does not entitle Vanpelt any relief.
 

 B.
 

 Second, Vanpelt asserts that the circuit court erred in death-qualifying the prospective jurors. Specifically, Vanpelt asserts that death-qualifying the jury produces a conviction-prone jury and disproportionately excludes minorities and women in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 

 Vanpelt did not object to voir dire questions focused on the jurors’ views towards capital punishment. Accordingly, this issue is reviewed for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P. This court has held:
 

 “In
 
 Lockhart v. McCree,
 
 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), the Supreme Court held that the Constitution does not prohibit states from ‘death qualification’ of juries in capital cases and that so qualifying a jury does not deprive a defendant of an impartial jury. 476 U.S. at 173, 106 S.Ct. at 1764. Alabama Courts have consistently held likewise. See
 
 Williams v. State,
 
 556 So.2d 737 (Ala.Crim.App.1986),
 
 rev’d in part,
 
 556 So.2d 744 (Ala.1987);
 
 Edwards v. State,
 
 515 So.2d 86, 88 (Ala.Crim.App.1987);
 
 Martin v. State,
 
 494 So.2d 749 (Ala.Crim.App.1985).”
 

 Sockwell v. State,
 
 675 So.2d 4, 18 (Ala.Crim.App.1993). Because the constitution does not prohibit death-qualification of the jury in a capital-murder trial, the circuit court committed no error, much less plain error, in allowing the prospective jurors to be questioned about their views toward capital punishment. Accordingly, this issue does not entitle Vanpelt to any relief.
 

 C.
 

 Third, Vanpelt argues that the circuit court erred in not allowing him to use juror questionnaires or to individually question the prospective jurors. Vanpelt argues that “[t]he denial of theses motions deprived [him] of his constitutional guarantee of a fair trial by an impartial jury.” (Vanpelt’s Brief at 97.)
 

 The record shows that Vanpelt moved the circuit court to require the prospective jurors to complete a juror questionnaire. (C.R. 35.) The basis for the motion was that Vanpelt was charged with a capital offense. The circuit court denied the motion after noting that compliance would “be unduly burdensome.” (R. 16.)
 

 “In
 
 Ex parte Land,
 
 678 So.2d 224, 242 (Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996), the Alabama Supreme Court held that the method of voir dire examination is within the discretion of the trial court and a trial court’s refusal to allow the use of [a] juror questionnaire is not an abuse of that discretion.”
 

 Hodges v. State,
 
 856 So.2d 875, 913 (Ala.Crim.App.2001). Nothing in the record suggests that the circuit court erred in denying the motion for juror questionnaires.
 

 
 *51
 
 In regard to the motion for individual sequestered voir dire examination, Vanpelt filed a pretrial motion requesting that the court allow the jurors to be questioned individually. (C.R. 63.) At a hearing where this motion was discussed, the circuit court stated:
 

 “The Court: I’m going to withhold ruling on that, but my intention is if we have some that say that they would not under any circumstance, you know, whatever, one way or the other, then we may individually voir dire them, okay?”
 

 (R. 21-22.) A review of the voir dire examination shows that the circuit court gave general qualification questions to the entire venire and when a juror responded to a question concerning capital punishment, the court allowed individual voir dire of those jurors. The attorneys then questioned the jurors. When jurors responded to questions concerning prior convictions, these jurors were questioned individually at the bench.
 

 “ ‘[T]here is no requirement that a defendant be allowed to question each prospective juror individually during voir dire examination. This rule applies to capital cases, and the granting of a request for individual voir dire is discretionary with the trial court.’
 
 Coral v. State,
 
 628 So.2d 954, 968 (Ala.Crim.App.1992), aff'd, 628 So.2d 1004 (Ala.1993).”
 

 Sneed v. State,
 
 1 So.3d 104, 135 (Ala.Crim.App.2007). Nothing in the record indicates that the circuit court abused its discretion in its method of conducting voir dire examination.
 

 D.
 

 Fourth, Vanpelt asserts that the circuit court erred in denying his “Motion to Require Disclosure of Any and All Information Concerning Prospective Jurors that may be Favorable to the Defense.” Vanpelt filed a pretrial motion to require the State to reveal any exculpatory information about the prospective jurors. (C.R. 50.) In denying this motion, the circuit court stated: “There is no requirement for the State to disclose any information on prospective jurors. Denied.” (R. 17-18.)
 

 The circuit court’s ruling is consistent with Alabama law. In
 
 Kelley v. State,
 
 602 So.2d 473 (Ala.Crim.App.1992), this court stated:
 

 “[T]he state has no duty to disclose information that is available to the appellant from another source.
 
 Hurst v. State,
 
 469 So.2d 720 (Ala.Cr.App.1985). Here, the appellant could have procured this information from the venire-members themselves during voir dire. See also
 
 Clifton [v. State,
 
 545 So.2d 173 (Ala.Crim.App.1988) ] (nondisclosure did not prejudice appellant’s defense).”
 

 602 So.2d at 478. Nothing in the record indicates that Vanpelt was prevented from discovering information about prospective jurors during voir dire. Consequently, Vanpelt has failed to establish that the circuit court abused its discretion by denying his motion to require the State to disclose information regarding prospective jurors.
 

 E.
 

 Fifth, Vanpelt argues that the circuit court erred in denying his motion entitled “Motion or Order to Obtain Legal Petit Jury for Trial.” This motion stated:
 

 “The practice of using only the licensed drivers list as the source for the master jury list and master jury box is contrary to the law of Alabama which requires that all qualified citizens have the opportunity to be considered for jury service, and that the jury list represent a fair cross-section of the community served by the Court.”
 

 
 *52
 
 (C.R. 60.) Vanpelt asserted the same argument during a motion hearing; however, he failed to present any evidence to support the assertions. (R. 20.)
 

 In
 
 Duren v. Missouri,
 
 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Supreme Court of the United States explained:
 

 “In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a ‘ “distinctive” ’ group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this un-derrepresentation is due to systematic exclusion of the group in the jury-selection process.”
 

 The
 
 Duren
 
 Court defined systematic exclusion as exclusion that is “inherent in the particular jury-selection process utilized.”
 
 Id.
 
 at 366;
 
 See also Gibson v. Zant,
 
 705 F.2d 1543, 1549 (11th Cir.1983) (“the
 
 Duren
 
 Court ... defined ‘systematic’ as ‘inherent in the particular jury-selection process utilized.’ ”). “[T]he fair cross-section requirement ensures only a venire of randomness, one free of systematic exclusion. It does not ensure any particular venire.”
 
 Gavin v. State,
 
 891 So.2d 907, 945 (Ala.Crim.App.2003) (internal citations and quotations omitted). “Rather than being entitled to a cross-sectional venire, a defendant has a right only to a fair chance, based on a random draw, of having a jury drawn from a representative panel.”
 
 Id.
 
 (internal citations and quotations omitted). This Court has repeatedly held that the random drawing of veniremembers from a list of licensed drivers satisfies the fair-cross-section requirement.
 
 See id.
 
 at 946-47;
 
 Carroll v. State,
 
 852 So.2d 801, 807-08 (Ala.Crim.App.1999);
 
 Clemons v. State,
 
 720 So.2d 961, 972 (Ala.Crim.App.1996);
 
 Sistrunk v. State,
 
 630 So.2d 147, 149-50 (Ala.Crim.App.1993).
 

 Because randomly selecting potential jurors for the venire from licensed drivers provided Vanpelt “a fair chance, based on a random draw, of having a jury drawn from a representative panel,”
 
 Gavin,
 
 891 So.2d at 945, Vanpelt’s Sixth Amendment rights were not violated. Accordingly, the circuit court did not abuse its discretion by overruling Vanpelt’s motion.
 

 F.
 

 Last, Vanpelt argues that the circuit court erred in denying his motion to sequester the jury. “Even in a capital case there is no requirement that a court sequester the jurors during the trial. The decision to grant or deny a motion to sequester the jury during trial is within the sound discretion of the trial court.
 
 See Centobie v. State,
 
 861 So.2d 1111 (Ala.Crim.App.2001).”
 
 Belisle v. State,
 
 11 So.3d 256, 279 (Ala.Crim.App.2007).
 
 See also Brown v. State,
 
 11 So.3d 866, 885 (Ala.Crim.App.2007) (holding that there is no requirement that the jury be sequestered). Moreover, Vanpelt has not offered any argument nor has he cited any portion of the record that would support an assertion that there was a need to sequester the jury.
 
 [5]
 
 Therefore, Vanpelt has not established that the circuit court abused its discretion by denying his motion to sequester the jury.
 

 II.
 

 Vanpelt next argues that the State used its peremptory strikes in a racially discriminatory manner in violation of
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Specifically,
 
 *53
 
 Vanpelt asserts that the State violated
 
 Batson
 
 by using five of its peremptory strikes to remove black prospective jurors.
 

 The United. States Supreme Court in
 
 Batson
 
 held that black prospective jurors could not be removed from a black defendant’s jury based solely on their race. This holding has been extended to white defendants in
 
 Powers v. Ohio,
 
 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); to civil cases in
 
 Edmonson v. Leesville Concrete Co.,
 
 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); to defense counsel in criminal cases in
 
 Georgia v. McCollum,
 
 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); and to gender-based strikes in
 
 J.E.B. v. Alabama,
 
 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). When evaluating a circuit court’s ruling on a
 
 Batson
 
 motion, this court keeps in mind the following principles:
 

 “‘The burden of persuasion is initially on the party alleging discriminatory use of a peremptory challenge to establish a prima facie case of discrimination. In determining whether there is a prima facie case, the court is to consider “all relevant circumstances” which could lead to an inference of discrimination.’
 

 “Ex parte Branch,
 
 526 So.2d 609, 622 (Ala.1987). An objection based on numbers alone, however, does not support the finding of a prima facie case of discrimination and is not sufficient to shift the burden to the other party to explain its peremptory strikes.
 
 Ex parte Trawick,
 
 698 So.2d 162 (Ala.1997).”
 

 Ex parte Walker,
 
 972 So.2d 737, 741 (Ala.2007).
 

 “The following are illustrative of the types of evidence that can be used to raise the inference of discrimination:
 

 “1. Evidence that the ‘jurors in question share[d] only this one characteristic — their membership in the group— and that in all other respects they [were] as heterogeneous as the community as a whole.’
 
 [People v.] Wheeler,
 
 22 Cal.3d [258], 280, 583 P.2d [748], 764, 148 Cal.Rptr. [890], 905. For instance ‘it may be significant that the persons challenged, although all black, include both men and women and are a variety of ages, occupations, and social or economic conditions,’
 
 Wheeler,
 
 22 Cal.3d at 280, 583 P.2d at 764, 148 Cal.Rptr. at 905, n. 27, indicating that race was the deciding factor.
 

 “2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors.
 
 Batson,
 
 476 U.S. at 97, 106 S.Ct. at 1723.
 

 “3. The past conduct of the state’s attorney in using peremptory challenges to strike all blacks from the jury venire.
 
 Swain [v. Alabama,
 
 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) ].
 

 “4. The type and manner of the state’s attorney’s questions and statements during voir dire, including nothing more than desultory voir dire.
 
 Batson,
 
 476 U.S. at 97, 106 S.Ct. at 1723;
 
 Wheeler,
 
 22 Cal.3d at 281, 583 P.2d at 764, 148 Cal.Rptr. at 905.
 

 “5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions.
 
 Slappy v. State,
 
 503 So.2d 350, 355 (Fla.Dist.Ct.App.1987);
 
 People v. Turner,
 
 42 Cal.3d 711, 726 P.2d 102, 230 Cal.Rptr. 656 (1986);
 
 People v. Wheeler,
 
 22 Cal.3d 258, 583 P.2d 748, 764, 148 Cal.Rptr. 890 (1978).
 

 “6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner; e.g., in
 
 Slappy,
 
 a black elementary school teach
 
 *54
 
 er was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged.
 
 Slappy,
 
 [503] So.2d at 352 and 355.
 

 “7. Disparate examination of members of the venire; e.g., in
 
 Slappy,
 
 a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors.
 
 Slappy,
 
 503 So.2d at 355.
 

 “8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury.
 
 Batson,
 
 476 U.S. at 93, 106 S.Ct. at 1721;
 
 Washington v. Davis,
 
 426 U.S. [229,] 242, 96 S.Ct. [2040,] 2049[ (1976)].
 

 “9. The state used peremptory challenges to dismiss all or most black jurors.
 
 See Slappy,
 
 503 So.2d at 354,
 
 Turner, supra.”
 

 Ex parte Branch,
 
 526 So.2d 609, 622-23 (Ala.1987). “When reviewing a trial court’s ruling on a
 
 Batson
 
 motion, this court gives deference to the trial court and will reverse a trial court’s decision only if the ruling is clearly erroneous.”
 
 Yancey v. State,
 
 813 So.2d 1, 3 (Ala.Crim.App.2001).
 

 Defense counsel made the following objection after the peremptory strikes were completed:
 

 “[Defense counsel]: Your honor, under
 
 Batson,
 
 I believe there were nine black members on the jury, the district attorney struck five. They were all black females. I have quickly tried to look at their answers. One was a [C.J.]. What I have is that she had a stepson who was convicted of rape, second. He was treated fair, but she has no hard feelings and can be fair. I don’t think that constitutes a race-neutral reason to strike her.
 

 “I also have — trying to get through as quickly as I can. We have got a [J.M.], I believe, or [J.M.], black female. She has got a son — all she said was she has got a son, got a problem with drugs, he has been convicted, but she can be fair and he was treated fairly. That answer does not in itself constitute race neutral.
 

 “The Court: Okay.
 

 “[Defense counsel]: [T.C.], her answer up here was if they do the crime they should do the time. She has a cousin indicted for drugs but said they were treated fair, no problem with the police. She stated, T believe if they do the crime, they should do the time.’ I think that is clearly race — clearly a violation of
 
 Batson
 
 to strike somebody.
 

 “The Court: Okay.
 

 “[Defense counsel]: That is all, your honor.
 

 “The Court: that is all?
 

 “[Defense counsel]: That is all.
 

 “The Court: Your motion under
 
 Bat-son
 
 is denied.”
 

 (R. 235-37.)
 

 This court has examined the voir dire examination and the State’s peremptory strikes. The record shows that the State exercised the following peremptory strikes in the following order after the jurors made the indicated responses to questions raised during voir dire:
 

 (1) D.K. — a white female — worked with defense counsel’s wife.
 

 (2) J.C. — a white male — first cousin had been convicted of capital murder.
 

 (3) D.H. — a white male — first cousin had been convicted of murder.
 

 (4) M.S. — a black female — first cousin had been convicted of murder.
 

 (5) T.V. — a white male — defense counsel had represented him in a civil case.
 

 
 *55
 
 (6) J.I. — a white female — brother had been charged with credit-card fraud.
 

 (7) C.T. — a white female — cousin’s husband was in prison for murder.
 

 (8) R.R. — a white female — brother had been convicted of several counts of theft.
 

 (9) T.C. — a black female — first cousin had been indicted for drug offense.
 

 (10) J.M. — a black female — son had been charged with a drug offense and theft of property.
 

 (11) M.B. — a black female — first cousin had been charged with an offense and found not guilty.
 
 [6]
 

 (12) A.H. — a white male — juror had been indicted by a federal grand jury in 1985 and pleaded guilty to distributing drugs. When asked, he indicated that his civil rights had been restored.
 

 (13) C.S. — a white female — juror had been convicted of a misdemeanor related to the possession of drug paraphernalia.
 

 (14) C.W. — a white male — juror testified for a former boss when his boss had been charged with theft.
 

 (15) M.S. — a white female — responded that she had heard about the case.
 

 (16) C.J. — a black female — stepson had been convicted of raping a minor and her brother and nephew had been convicted for drug offenses. Also said that her husband was a police officer.
 

 (17) J.C. — a white female — had heard about the case.
 

 (18) R.H. — a white female — had read about the case and had served on a jury that returned a not-guilty verdict.
 

 (19) J.D. — a white male — made no responses to questions during voir dire.
 

 (20) T.V. — a white male — was self-employed and had a long-time employee who had been convicted of murder.
 

 (21) J.J. — a white female — made no responses to voir dire questions.
 

 (22) H.W. — a white male — attended church with defense counsel and was in the choir with defense counsel’s wife.
 

 (23) J.B. — a white female — made no responses during voir diré questions.
 

 (24) C.M. — a white female — knew one of the State’s witnesses.
 

 (25) J.H. — a white female — had contact with numerous deputy sheriffs who worked as resource officers at the school where juror taught.
 

 Further, this court notes that defense counsel used every one of its 25 peremptory strikes to remove white prospective jurors. After both sides had exhausted their peremptory challenges, Vanpelt’s jury was composed of 8 white jurors and 4 black jurors.
 

 After reviewing the relevant portions of the record, this court finds that the circuit court did not abuse its discretion by denying Vanpelt’s
 
 Batson
 
 motion. Alabama courts have repeatedly held that numbers alone are not sufficient to establish a pri-ma facie case of discrimination.
 
 See Ex parte Walker,
 
 972 So.2d 737 (Ala.2007);
 
 Saunders v. State,
 
 10 So.3d 53 (Ala.Crim.App.2007). The record contains no evidence of disparate treatment between the white and black prospective jurors in this case. For instance, all of the prospective jurors who indicated that they had convictions, both black and white, were struck as well as all of the jurors who answered during voir dire that they had relatives who had been charged or convicted of criminal offenses.
 
 Cf. Johnson v. State,
 
 43
 
 *56
 
 So.3d 7 (Ala.Crim.App.2009) (upholding striking prospective jurors who have convictions or who have relatives who have prior arrests or convictions);
 
 Brown v. State,
 
 982 So.2d 565 (Ala.Crim.App.2006) (same);
 
 Acklin v. State,
 
 790 So.2d 975 (Ala.Crim.App.2000)(same);
 
 Thomas v. State,
 
 611 So.2d 416 (Ala.Crim.App.1992) (same);
 
 Jackson v. State,
 
 549 So.2d 616 (Ala.Crim.App.1989). Further, there is no indication in the record that the State struck black potential jurors in a pattern. Finally, the voir dire was extensive and did not unduly focus on any specific juror or jurors.
 

 In sum, the mere fact that the State used 5 of its 25 peremptory challenges to strike 5 of 9 black jurors does not raise an inference of racial discrimination.
 
 See Johnson v. State,
 
 823 So.2d 1, 20 (Ala.Crim.App.2001) (upholding the circuit court’s finding that the defendant failed to establish a prima facie case of racial discrimination when the defendant’s only support for his
 
 Batson
 
 motion was that “the State used 6 (less than half of its 14) strikes to remove 6 of the 9 blacks from the venire_”). Therefore, the circuit court did not abuse its discretion by finding that Vanpelt failed to establish a prima facie case of racial discrimination and overruling his
 
 Batson
 
 motion.
 

 III.
 

 Vanpelt next argues that the circuit court erred in allowing the State to introduce evidence concerning the life insurance policy on Sandra’s life. He asserts two different grounds in support of this contention.
 

 A.
 

 Vanpelt first argues that evidence of the existence of the life insurance policy was inadmissible because the State failed to first establish that Vanpelt believed that the policy was valid. Citing eases from other jurisdictions, Vanpelt argues that evidence of the existence of an insurance policy “is inadmissible [to establish motive] unless it can be established that the defendant knew about the policy, believed it to be in effect, and expected to benefit from it.” (Vanpelt’s Brief at 69-70.) He cites the Illinois case of
 
 People v. Mitchell,
 
 105 Ill.2d 1, 85 Ill.Dec. 465, 473 N.E.2d 1270 (1984), to support his assertion.
 

 The Illinois Supreme Court in
 
 People v. Mitchell,
 
 stated:
 

 “This court long ago recognized that any evidence which tends to show that an accused had a motive for killing is relevant. However, with reference to insurance policies, this court has required proof of the existence of such a policy and its relationship to the defendant. In
 
 People v. Gougas
 
 (1951), 410 Ill. 235, 239, 102 N.E.2d 152, this court determined that the admission of evidence of a life insurance policy must be predicated upon evidence of the defendant’s knowledge of its existence, its validity, or believed validity, and that he will benefit therefrom.”
 

 105 Ill.2d at 10, 85 Ill.Dec. at 469, 473 N.E.2d at 1274.
 

 Alabama has never followed such a narrow view regarding the admissibility of life insurance policies in a criminal case. In
 
 Turner v. State,
 
 224 Ala. 5, 140 So. 447 (1931), the Alabama Supreme Court stated:
 

 “In cases based largely upon circumstantial evidence, a rather wide range of evidence is allowed in developing circumstances tending to show motive on the part of the accused. In cases of this character, it is not essential that he should be the payee of the policies, nor that it be shown just how he came to have an interest in the insurance money. If there be evidence tending to show he
 
 *57
 
 did have an interest in it, evidence is proper to show the existence of such fund, as well as any other fact touching the subject-matter, which will enable the jury to appraise the value of the whole evidence as tending to show motive.”
 

 224 Ala. at 6, 140 So. at 448.
 
 See also Burton v. State,
 
 194 Ala. 2, 69 So. 913 (1915) (evidence of a life insurance policy was admissible even though the policy was payable to the wife of the deceased);
 
 Spicer v. State,
 
 188 Ala. 9, 18, 65 So. 972, 975 (1914) (“On the trial the state sought to prove, and did prove, that the defendant had procured several policies of insurance, in his favor, on the life of his wife; such policies aggregating about $17,000. This fact was admissible as tending to show motive on the part of defendant to take the life of the insured — deceased.”);
 
 Stewart v. State,
 
 18 Ala.App. 92, 95, 89 So. 391, 394 (1921) (“It cannot be held under the facts disclosed in this record to have been error to permit the state to show that deceased had a paid-up life insurance policy payable to his three children, and that some time before the killing the defendant Kendrick was making inquiry of the insurance agent as to those facts.”).
 

 “The instances of when the state has been permitted to prove facts showing a motive are numerous on the criminal side.... One of the most common cases where motive is shown is that where the wife allegedly is murdered by the husband. In these cases a whole host of circumstances, existing between the two parties, are admitted for the purpose of showing that one spouse had a motive for killing the other.
 

 “Proof may be made of circumstances indicating that the accused’s motive to commit a crime was created by a desire to acquire money or property. Such circumstances may range from the fact that the accused was the beneficiary on the victim’s life insurance to the fact that the victim possessed a large amount of money at the time of the homicide.”
 

 Charles W. Gamble,
 
 McElroy’s Alabama Evidence
 
 § 45.01(8) (5th ed.1996). Because the State is not required to prove that Vanpelt believed that the insurance policy was valid before the policy became admissible to establish motive, Vanpelt’s argument is without merit.
 

 Moreover, contrary to Vanpelt’s assertion, the State did present evidence tending to show that he believed the life insurance policy was valid. The State presented evidence that Vanpelt purchased a life insurance policy insuring Sandra’s life and naming Vanpelt as the beneficiary. The State presented evidence that upon purchasing the policy, Vanpelt was informed that Sandra’s life was conditionally covered pending acceptance of the policy by the insurance company. After purchasing the insurance, Vanpelt called to check on the status of the coverage and was told that Sandra was conditionally covered. Vicki Estes, an agent of the insurance company, explained to Vanpelt that “the policy was in force.” (R. 676.) Further, the State offered a letter written by Van-pelt to Edward Parsons in which he offered to pay Parsons $75,000 of the insurance proceeds if Parsons successfully aided Vanpelt in avoiding a conviction for Sandra’s death. (C.R. 400.)
 

 Based on the foregoing, the State presented sufficient evidence from which the jury could have inferred that Vanpelt believed that the insurance policy on Sandra’s life was valid and in force. Consequently, Vanpelt’s argument is without merit and does not entitle him to any relief.
 

 B.
 

 Vanpelt next argues that the testimony regarding the terms of Sandra’s life
 
 *58
 
 insurance policy violated the best-evidence rule. Specifically, he argues that testimony concerning the fact that Sandra had “conditional coverage” was admitted in error because the State should have introduced the “original written document signed by Mr. Vanpelt containing the terms of conditional coverage.” (Vanpelt’s Brief at 74.)
 

 Two employees of the insurance company Vanpelt contacted about coverage testified at trial. Joe Medders testified that upon payment “if they write a check for coverage they have conditional coverage for death benefits if there is not a preexisting condition.” (R. 643.) Defense counsel objected and was allowed to question Medders outside the presence of the jury. The following occurred:
 

 “[DEFENSE COUNSEL]: At this time, Your Honor, I want to go ahead and offer Defendant’s Exhibit 1 into evidence. Again, I want to raise my objection to any testimony that he has given thus far concerning the terms and the policies of the company. He has not provided an executed copy and for him to testify without any proof is in violation of the best evidence rule. The document — the signed document by my client is the best evidence of what he has to say.
 

 “[PROSECUTOR]: Your Honor, he has testified that is an exact copy and it is kept in the ordinary course of business. He testified that if there is a receipt, he gave it to the defendant and that is why he [does not] have it and that is why we don’t have it and they don’t have it. The defendant had it.”
 

 (R. 649.) Medders testified that conditional coverage means that if there was no reason to deny the policy and the covered person was killed or died of a condition that was not preexisting then the company would pay a policy up to $500,000.
 

 Vicki Estes testified that Vanpelt filed an application for life insurance on himself and Sandra, that each policy was for $300,000, that Vanpelt was the sole beneficiary of Sandra’s policy, and that Vanpelt gave her a check for the amount of the first month premiums on both policies. She also testified that she normally would have the individual sign the conditional receipt and give them the original. Estes also said that neither she nor the company retained a copy of the conditional receipt. She also testified that after Vanpelt gave her the check for the premiums, he called several times to verify the policies. In one of these conversations, she said, Vanpelt told her that Sandra previously had cervical cancer but was now free of cancer.
 

 Rule 1002, Ala. R. Evid., often referred to as the best-evidence rale, states:
 

 “To prove the content of a writing, the original writing is required, except as otherwise provided by statute, these rules, or by rules applicable in the courts of this state.”
 

 The Advisory Committee’s Notes to this rule state:
 

 “The rule of preference applies only when the nonoriginal evidence is offered to prove the content of the writing. This language reaffirms that traditional authority in Alabama recognizing the admissibility of secondary evidence when the offeror is not seeking to prove the contents of a writing. An event, for example, may be proven by oral testimony even though, for convenience, it has been evidenced by a writing.”
 

 Charles W. Gamble,
 
 McElroy’s Alabama, Evidence
 
 § 212.01(4) (5th ed.1996), states: “A witness does not ran afoul of the best evidence requirement simply because there happens to be a writing memorializing the matter to which the witness testifies.” (Footnote omitted.) Because Med-
 
 *59
 
 ders’s and Estes’s testimony related the insurance company’s agreement with Van-pelt, which was memorialized in a written document and was not admitted to prove the contents of the written document, their testimony did not run afoul of the best-evidence rule.
 
 [7]
 
 Consequently, the circuit court did not err by allowing the State to elicit testimony concerning the life insurance policies.
 

 IV.
 

 Vanpelt next argues that the circuit court erred in allowing prejudicial statements from Sandra’s coworkers to be admitted into evidence. Specifically, he argues that the State presented prejudicial hearsay testimony when it admitted evidence that two of Sandra’s coworkers had told Sandra after she signed the insurance policy that Vanpelt was going to kill her. Vanpelt did not object to either instance that he now complains constitutes inadmissible hearsay; therefore, this court reviews this issue for plain error.
 
 See
 
 Rule 45A, Ala. RApp. P.
 

 Linda Aday, a coworker of Sandra’s at Shoneys restaurant, testified that two days after Sandra and Vanpelt were married Vanpelt came to the restaurant to have Sandra sign some insurance papers. She said:
 

 “I was kidding around with her stating that you had better watch your back, he was going — just kidding around because it was so soon taking out insurance on her and the way they met, I was just kidding around saying, you had better watch your back, he is going to do something.”
 

 (R. 726.) Another coworker, Terry Pate, also testified that she was present when Vanpelt came to Shoney’s to have Sandra sign some insurance papers and that she saw her sign some of the papers. Pate then testified:
 

 “[Prosecutor]: After she signed those papers did you make any remarks to her?
 

 “[Pate]: I made a joking remark to her.
 

 “[Prosecutor]: What did you say to her?
 

 “[Pate]: ‘Girl, he is going to kill you.’
 

 “[Prosecutor]: Were you playing or joking with her at the time?
 

 “[Pate]: Joking and kind of saying it, too. But I was saying it jokingly to her.”
 

 (R. 758.)
 

 “Hearsay” is defined as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Rule 801(c), Ala. R. Evid. Clearly, the remarks made by Sandra’s coworkers were not offered to prove the truth of the matter asserted. Each witness/declarant testified that the statements were made to Sandra in jest — as a joke. It is difficult to have a hearsay violation when the declarant does not believe that the admitted statement is true. Because the statements were not offered to prove the truth of the matter asserted, no hearsay violation occurred.
 

 Vanpelt also argues that the statements were improper opinion testimony concerning his character and their admission violated Rule 404(a), Ala. R. Evid. This issue was not raised below; therefore,
 
 *60
 
 this court reviews it for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 Rule 404(a), Ala. R. Evid., provides, in pertinent part:
 

 “(a) Character Evidence Generally. Evidence of a person’s character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
 

 “(1)
 
 Character of Accused.
 
 Evidence of character offered by an accused, or by the prosecution to rebut the same.... ”
 

 Contrary to Vanpelt’s assertion, Sandra’s coworkers’ statements were not offered to “convey[ ] that [Sandra’s] colleagues were of the opinion that [Vanpelt] was capable of killing his wife, or at a minimum, that they believed he was suspicious enough that she should have cause for concern.” (Vanpelt’s Brief at 16-17.) Instead, the comments were made in jest, a fact of which the jury was well aware. Because the statements by Sandra’s coworkers were not offered to establish Van-pelt’s bad character, their admission did not run afoul of Rule 404(a), Ala. R. Evid.
 

 Moreover, even if the coworkers’ statements were inadmissible for some reason, them admission would be harmless beyond a reasonable doubt.
 
 See Chapman v. California,
 
 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Both witnesses testified that the statements were made to Sandra as a joke, and they did not mean what was said. Because these statements were made in jest and the jury was made well aware of that fact, the admission of the statements could not have influenced the jury’s deliberations and did not rise to the level of plain error. Rule 45A, Ala. R.App. P.;
 
 Ex parte Brown,
 
 11 So.3d 933, 938 (Ala.2008)(holding that plain error must have an unfair prejudicial impact on the jury’s deliberations). Therefore, Van-pelt is not entitled to any relief.
 

 V.
 

 Vanpelt next argues that the circuit court erred in allowing his ex-fiancée, Patti Lawson, to testify that he proposed to her less than one month before he married Sandra. Specifically, Vanpelt asserts that this evidence was inadmissible because it constituted prior-bad-act evidence that did not fall within any exception to the general exclusionary rule. Rule 404(b), Ala. R. Evid.
 

 The State gave Vanpelt notice that it intended to present Lawson’s testimony for the purpose of showing Vanpelt’s intent and motive. (C.R. 134.) Vanpelt then filed a motion in limine to exclude this testimony; however, the motion stated no grounds for exclusion. At a pretrial hearing where this motion was discussed, Vanpelt again gave no specific argument as to why this testimony was not admissible. The State asserted the following at the hearing:
 

 “Within a — a week before the marriage and within three weeks of Sandra’s death there was another woman — we expect the testimony to be that [Lawson] was contacted and was offered that ring and was going to be a re-proposal. We do expect to offer that testimony to show that [Vanpelt’s] intent was in the relationship with Sandra Ozment.”
 

 (R. 49.) The circuit court denied the motion to exclude this evidence. Because no specific arguments were made below as to why this testimony was not admissible, this court reviews this issue for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 Lawson testified that she met Vanpelt in 2000 as a result of a personal ad she had posted on the Internet; that her relationship with Vanpelt lasted for four years; that she was engaged to him; and that the engagement ring he gave her was the
 
 *61
 
 same ring that he gave to Sandra. Lawson further stated that around the middle of October 2004, Vanpelt telephoned her and said that he wanted them to get back together and he sent her an airline ticket to Memphis. The ticket was dated October 29 — 10 days before Vanpelt married Sandra. Lawson said that she did not go to Memphis to meet Vanpelt.
 

 Rule 404(b), Ala. R. Evid., provides:
 

 “Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.”
 

 “If an accused is charged with a crime that requires a prerequisite intent, ... then prior or subsequent [bad acts] are admissible to establish that he had the necessary intent when he committed the instant crime.”
 
 Jones v. State,
 
 439 So.2d 1308, 1310 (Ala.Crim.App.1983). In
 
 McClendon v. State,
 
 813 So.2d 936, 944 (Ala.Crim.App.2001), this court held that:
 

 “Because intent was an element of the crime charged, and because intent was a genuine issue in this case, the collateral act evidence was admissible to show McClendon’s intent. We agree with the trial court that the testimony regarding McClendon’s actions preceding his first wife’s murder was not precluded by the general rule regarding evidence of prior bad acts.
 
 See Averette v. State,
 
 469 So.2d 1371, 1374 (Ala.Crim.App.1985).”
 

 At trial, the State’s theory was that Vanpelt planned to and eventually did marry Sandra to obtained an insurable interest in her life, then murdered her for the insurance proceeds. To support this theory, the State presented evidence that just before his marriage to Sandra, Van-pelt proposed marriage to another woman. The State presented evidence that shortly after marrying Sandra, Vanpelt procured an insurance policy on her life. Finally, the State established that after procuring the insurance policy, Vanpelt murdered Sandra. The fact that Vanpelt proposed to another woman shortly before he murdered his wife was key to the State’s theory that Vanpelt married Sandra only to insure her life and then murder her. Because this evidence was relevant to show that Vanpelt planned to murder Sandra prior to marrying her, it was admissible pursuant to Rule 404(b), Ala. R. Evid., to show plan and intent.
 

 Furthermore, the probative value of this evidence far outweighed its prejudicial effect. Rule 403, Ala. R. Evid., states that evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” As discussed above, Van-pelt’s marriage proposal to another woman shortly before murdering his wife was probative to establish that he planned to and intended to murder his wife. Further, this evidence was not unduly prejudicial.
 
 See Grayson v. State,
 
 824 So.2d 804, 821 (Ala.Crim.App.1999) (citations and quotations omitted) (“Prejudicial is used [in Rule 403, Ala. R. Evid.,] to limit the introduction of probative evidence of prior misconduct only when it is unduly and unfairly preju
 
 *62
 
 dicial. ... What is meant here is an undue tendency to move the tribunal to decide [the cause] on an improper basis, commonly, but not always, an emotional one.”). There is little, if any, probability that 12 rational jurors would find Vanpelt guilty of capital murder based on an emotional reaction to the fact that he proposed to another woman shortly before marrying his wife. Accordingly, the circuit court did not abuse its discretion in allowing Lawson’s testimony to show plan and intent in this case.
 

 Vanpelt further argues that the circuit court erred in failing to sua sponte instruct the jury that “the evidence is not to be considered as substantive evidence of guilt.” (Vanpelt’s Brief at 31.) Contrary to Vanpelt’s assertion, evidence of intent, plan, and preparation is substantive evidence of guilt. As the Alabama Supreme Court has held:
 

 “The evidence of Johnson’s bigamy conviction and her prior bad acts were offered, not as impeachment evidence, but as substantive evidence of the crime with which she was charged. As discussed above, the bigamy conviction was offered as proof of motive and as an element of the capital offense with which she was charged — i.e., murder of a witness who had testified against her. Evidence of Johnson’s prior bad acts, i.e., her adulterous relationships, sexual manipulations, threats, and proddings in order to enlist a male counterpart to assault or to murder McCullar, was offered to prove an unbroken chain of events or a single transaction that culminated in the murder of McCullar....
 

 “It is contradictory and inconsistent to allow, on the one hand, evidence of Johnson’s prior bigamy conviction and prior bad acts as substantive evidence of the offense with which she was charged, yet, on the other hand, to require a limiting instruction instructing the jury that it cannot consider the evidence as substantive evidence that Johnson committed the charged offense. Other jurisdictions that have considered this issue have concluded that a limiting instruction is not required when evidence of other crimes or prior bad acts is properly admitted as part of the res gestae of the crime with which the defendant is charged. See
 
 People v. Coney,
 
 98 P.3d 930 (Colo.Ct.App.2004) (holding that evidence of other offenses or acts that are part and parcel of the charged offense is admissible as res gestae and may be admitted without a limiting instruction);
 
 State v. Long,
 
 173 N.J. 138, 171, 801 A.2d 221, 242 (2002) (evidence of the defendant’s actions ‘served to paint a complete picture of the relevant criminal transaction’ and therefore was admissible, and a limiting instruction was unnecessary because the evidence was admitted under the res gestae exception); and
 
 Camacho v. State,
 
 864 S.W.2d 524, 535 (Tex.Crim.App.1993) (holding the evidence of the extraneous offenses showed the context in which the criminal act occurred, i.e., the res gestae, and was therefore admissible and not subject to the requirement of a limiting instruction).”
 

 Johnson v. State,
 
 [Ms. 1041313, October 6, 2006] — So.3d-,-(Ala.2006).
 

 Here, Lawson’s testimony regarding Vanpelt’s proposal was admitted to show plan and intent; therefore, it was admitted as substantive evidence of guilt, and the circuit court did not err in failing to instruct the jury otherwise. Consequently, this issue does not entitle Vanpelt to any relief.
 

 VI.
 

 Vanpelt next argues that the circuit court erred in allowing testimony re
 
 *63
 
 garding the canine search of Sandra’s vehicle and the Vanpelts’ mobile home. Specifically, he asserts numerous reasons why he believes that the State failed to lay the proper foundation for the admission of dog-tracking evidence. Vanpelt did not object when this evidence was introduced at trial, nor did he assert any of the foundation arguments he now raises on appeal; therefore, this court reviews this issue for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 At trial, Edward Nicholas, the search coordinator for Huntsville Emergency Medical Services, Inc. search-dog unit, testified that the dogs used in this case were used to detect human remains. According to Nicholas, the dogs had a very high level of interest in the backseat and trunk of Sandra’s vehicle and a slight indication to a corner on the porch of Vanpelt’s mobile home.
 

 In Alabama, “[t]he admissibility of dog-tracking evidence upon a proper predicate has been recognized ... for over a century.
 
 See Burks v. State,
 
 240 Ala. 587, 200 So. 418 (1941);
 
 Orr v. State,
 
 236 Ala. 462, 183 So. 445 (1938);
 
 Loper v. State,
 
 205 Ala. 216, 87 So. 92 (1920);
 
 Gallant v. State,
 
 167 Ala. 60, 52 So. 739 (1910);
 
 Hargrove v. State,
 
 147 Ala. 97, 41 So. 972 (1906);
 
 Richardson v. State,
 
 145 Ala. 46, 41 So. 82 (1906);
 
 Little v. State,
 
 145 Ala. 662, 39 So. 674 (1905);
 
 Hodge v. State,
 
 98 Ala. 10, 13 So. 385 (1893);
 
 Holcombe v. State,
 
 437 So.2d 663 (Ala.Crim.App.1983);
 
 Moore v. State,
 
 26 Ala.App. 607, 164 So. 761 (1935); and
 
 Allen v. State,
 
 8 Ala.App. 228, 62 So. 971 (1913).”
 
 Gavin v. State,
 
 891 So.2d 907, 971 (Ala.Crim.App.2003). In
 
 Gavin,
 
 this court established the proper predicate for the admission of dog-tracking evidence.
 
 Id.
 
 Specifically, this court held that dog-tracking evidence is admissible if the State establishes “the training and reliability of the dog, the qualifications of the person handling the dog, and the circumstances surrounding the tracking by the dog.”
 
 Gavin,
 
 891 So.2d at 971.
 
 See also State v. Montgomery,
 
 968 So.2d 543, 550 n. 6 (Ala.Crim.App.2006) (reiterating the three foundational requirements for the admission of dog-tracking evidence);
 
 State v. Neeley,
 
 143 Ohio App.3d 606, 630-31, 758 N.E.2d 745, 764 (2001) (holding that the State may establish the predicate for dog-tracking evidence by showing “the training and reliability of the dog, the qualifications of the person handling the dog, and the circumstances surrounding the trailing by the dog....”);
 
 McDuffie v. State,
 
 482 N.W.2d 234, 237 (Minn.Ct.App.1992) (same requirements); Rule 702, Ala. R. Evid. (“A witness qualified as an expert by knowledge, skill, experience, training, or education, may testify ... in the form of an opinion or otherwise.”). This court further explained that “[t]he foundational evidence need not be overwhelming or specific, but must be sufficient to indicate reliability of the evidence.”
 
 Gavin,
 
 891 So.2d at 971 (citing
 
 Burks v. State,
 
 240 Ala. 587, 200 So. 418, 419 (1941)).
 
 See also Montgomery,
 
 968 So.2d at 550 n. 6 (same).
 

 Nicholas testified that he has been coordinating dog searches with the group for 15 years and has done a great deal of study regarding dog searches. (R. 759, 773.) Nicholas explained that he is familiar with the dogs that performed the search in this case and that he helped train those dogs. (R. 760, 766.) Nicholas described in detail the process used to train the dogs and the specialized training the dogs received. He further stated that all four dogs were certified and “considered mission ready in both live and cadaver.” (R. 761-64.) Nicholas then detailed the circumstances surrounding the search of the two vehicles and the mobile home. (R. 765-69.)
 

 
 *64
 
 Based on the foregoing, the State established a proper foundation for the admission of the dog-tracking evidence and presented sufficient evidence to indicate that the evidence was reliable.
 
 Gavin,
 
 891 So.2d at 971. Consequently, Vanpelt has not established that the circuit court’s failure to sua sponte prevent the admission of the dog-tracking evidence constituted plain error. Rule 45A, Ala. R.App. P.
 

 To the extent Vanpelt argues that the circuit court erred by failing to exclude the dog-tracking evidence based on the State’s failure to establish foundational requirements beyond those established by this court in
 
 Gavin,
 
 he has failed to establish plain error. Rule 45A, Ala. R.App. P.
 
 See
 
 (Vanpelt’s Brief at 42-45) (arguing that the State failed to provide documentation regarding the training and qualification of the dogs and the handlers, failed to provide information about the reliability of the dogs, and failed to provide error rates). This court cannot say that the circuit court’s failure to sua sponte expand the foundational requirements established in
 
 Gavin
 
 was a “particularly egregious [error that] seriously affectfed] the fairness, integrity or public reputation of judicial proceedings.”
 
 Ex parte Deardorff,
 
 6 So.3d 1235, 1240 (Ala.2008) (citations and quotations omitted).
 
 See also Gavin,
 
 891 So.2d at 971 (rejecting the argument that the State must establish the reliability rate or track record of the dogs as a foundational requirement to the admission of dog-tracking evidence). Therefore, Vanpelt is not entitled to any relief.
 

 VII.
 

 Vanpelt next argues that the circuit court erred in admitting DNA testimony concerning the blood that was discovered in the Vanpelts’ mobile home. Specifically, Vanpelt asserts that the circuit court erroneously allowed the State to admit DNA evidence and population statistics based on the DNA evidence because the State failed to establish the proper predicate for the admission of these types of evidence. Vanpelt did not file a pretrial motion seeking to exclude the DNA evidence, nor did he object or contest the reliability of the evidence when it was admitted at trial; therefore, this issue is reviewed for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 The State presented the testimony of Robert Bass, a forensic scientist with the Alabama Department of Forensic Sciences in Huntsville. Bass testified that he had a bachelor’s degree in biology and a minor in chemistry from the University of North Alabama, that he specializes in biochemistry, genetics, molecular biology, and statistics and
 

 “As far as my training goes, I completed the Department of Forensic Sciences— the DNA training program, serology training program, and prior to that I worked in a biotechnology company doing DNA research.”
 

 (R. 809.) Bass further testified that the laboratory at which he worked has been accredited by the American Society of Crime Laboratory Directors since 2003 and that the DNA section has a separate “certification by the National Forensic Science and Technology Center.” (R. 809-10.) Bass stated that he has specialized knowledge in the use of statistics to determine the significance of DNA matches; that he had attended college courses, seminars, and training courses in statistical calculations; and that he had previously testified in court as a DNA expert.
 

 Bass further testified that he compared 16 genetic markers and one loci in the blood from the mobile home to blood taken from Sandra and Vanpelt. He used nuclear DNA for the tests and compiled two charts showing the sequence of the DNA
 
 *65
 
 profiles.
 
 [8]
 
 Bass testified that he tested a drop of blood found on a box, one found on a curtain, and several drops found in the master bedroom of the mobile home. According to Bass, all the samples contained Sandra’s blood, one sample contained Van-pelt’s blood, and two samples were from an unidentified person. Bass further testified that one sample taken was from two or more sources. The major component of the blood matched Vanpelt, and the statistics showed the match was approximately 1 in 1.82 quadrillion Caucasian individuals.
 

 Section 86-18-30, Ala.Code 1975, governs the admissibility of DNA evidence and states:
 

 “Expert testimony or evidence relating to the use of genetic markers contained in or derived from DNA for identification purposes shall be admissible and accepted as evidence in all cases arising in all courts of this state, provided, however, the trial court shall be satisfied that the expert testimony or evidence meets the criteria for admissibility as set forth by the United States Supreme Court in
 
 Daubert, et. ux., et. al. v. Merrell Dow Pharmaceuticals, Inc.,
 
 [509 U.S. 579 (1993),] decided on June 28, 1993.”
 

 The Alabama Supreme Court in
 
 Turner v. State,
 
 746 So.2d 355 (Ala.1998), set out the following two-prong test regarding the admissibility of DNA evidence:
 

 “I. Are the theory and the technique (i.e., the principle and the methodology) on which the proffered DNA forensic evidence is based ‘reliable’?
 

 “II. Are the theory and the technique (i.e., the principle and the methodology) on which the proffered DNA evidence is based ‘relevant’ to understanding the evidence or to determining a fact in issue?”
 

 746 So.2d at 361 (footnotes omitted).
 

 In his brief on appeal, Vanpelt argues that the circuit court erroneously allowed the State to admit DNA and population-frequency statistics because the State failed to present sufficient evidence to establish the first
 
 Turner
 
 prong. The State argues that absent an objection from Van-pelt, there is no requirement that the circuit court hold a hearing or make a determination that the evidence was reliable. The State further argues that because Vanpelt did not contest the reliability of the evidence at trial, he has not shown that plain error occurred in the admission of this evidence. This court agrees with the State.
 

 Initially, this court notes that nothing in the record indicates that the State’s DNA or statistical evidence was unreliable. Further, Vanpelt never contested, before or during trial, the reliability of the State’s DNA or statistical evidence. Without an objection or any contest regarding the reliability of the evidence, the circuit court was not required to hold a hearing on the admissibility of the DNA evidence, nor was it required to sua sponte assess the admissibility of the evidence. See
 
 Turner,
 
 746 So.2d at 361 (“We hold that
 
 if the admissibility of DNA evidence is contested,
 
 the trial court must hold a hearing ... and ... determine whether the proponent of the evidence sufficiently establishes [both prongs of the
 
 Daubert
 
 test].... Only if a party challenges the performance of a reliable and relevant technique and shows that the performance was so particularly and critically deficient that it undermined
 
 *66
 
 the reliability of the technique, will evidence that is otherwise reliable and relevant be deemed inadmissible.”) (emphasis added);
 
 Payne v. State,
 
 683 So.2d 440 (Ala.Crim.App.1995) (holding that the circuit court did not commit plain error in failing to hold a hearing regarding the admissibility of DNA evidence when the defendant did not request such hearing);
 
 Broadnax v. State,
 
 825 So.2d 134, 173 (Ala.Crim.App.2000) (same). Because Vanpelt did not contest the reliability of the DNA and statistical evidence, no error, plain or otherwise, occurred from the circuit court’s failure to sua sponte make an admissibility determination.
 

 Moreover, Vanpelt has not established that plain error occurred in the admission of the DNA and statistical evidence without a sufficient showing of both prongs of
 
 Turner.
 
 As this court held in
 
 Perkins v. State,
 
 808 So.2d 1041, 1094 (Ala.Crim.App.1999), overruled on other grounds, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002):
 

 “Perkins offers no proof that, had his counsel challenged the DNA evidence at trial by demanding that the State’s witnesses provide testimony fully satisfying all prongs of the
 
 Ex parte Perry[
 
 586 So.2d 242 (Ala.1991),] test, the State would have been unable to lay a sufficient predicate for the admission of the DNA evidence. We find that, absent an objection at trial, and absent any suggestion that the DNA evidence was unreliable, the admission of the DNA evidence in Perkins’s case was not plain error.
 
 See McDonald v. State,
 
 743 So.2d 501 (Fla.1999) (admission of DNA evidence in capital-murder trial without the proper predicate, absent an objection by the defendant, was not “fundamental error”).
 

 See also Thomas v. State,
 
 824 So.2d 1, 54 (Ala.Crim.App.1999), overruled on other grounds,
 
 Ex parte Carter,
 
 889 So.2d 528 (Ala.2004) (holding that plain error did not occur when the circuit court failed to sua sponte exclude DNA evidence based on an inadequate foundation because the defendant failed to show that “had defense counsel objected, any alleged weakness in the evidentiary foundation of the DNA evidence might well have been alleviated by additional evidence. We have no indication that the prosecution could not have produced further evidence, had defense counsel objected.”).
 

 Here, as in
 
 Perkins
 
 and
 
 Thomas,
 
 nothing in the record indicates that the DNA and statistical evidence was unreliable. Vanpelt did not contest the reliability or the relevance of the DNA and statistical evidence. Defense counsel accepted Bass as an expert in conducting DNA tests and compiling statistical data related to those tests. The circuit court had no reason to doubt Bass’s qualifications or the reliability of the procedures he used in a duly accredited laboratory. Further, Vanpelt offered no proof that had counsel challenged this evidence at trial, the State would not have been able to lay a sufficient predicate for its admission.
 

 Based on the foregoing, this court cannot say that allowing DNA and statistical evidence of uncontested reliability to be admitted at trial was a “particularly egregious [error that] seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.”
 
 Ex parte Deardorff,
 
 6 So.3d 1235, 1240 (Ala.2008) (citations and quotations omitted). Further, with nothing in the record to show that the State would not have been able to present a sufficient foundation had it been required to do so, this court cannot say that the State’s failure to do so affected the out
 
 *67
 
 come of the trial.
 
 [9]
 

 See Perkins,
 
 808 So.2d at 1094;
 
 Thomas,
 
 824 So.2d at 54. Therefore, Vanpelt is not entitled to any relief.
 

 VIII.
 

 Vanpelt next argues that the circuit court erroneously allowed Investigator Marc McCormick to testify regarding tire tracks in the grass near where Sandra’s body was found. Specifically, Van-pelt asserts that Investigator McCormick’s testimony was inadmissible because it constituted improper lay-opinion testimony under Rule 701, Ala. R. Evid. He also argues that the circuit court erroneously denied his motion for a mistrial after Investigator McCormick’s tire-track testimony because the State violated Rule 16, Ala. R.Crim. P., and the circuit court’s discovery order. This court addresses these arguments in turn.
 

 A.
 

 First, Vanpelt argues that the circuit court erred in allowing a lay witness to testify concerning tire tracks found near Sandra’s body. Specifically, Vanpelt argues that Investigator McCormick’s testimony regarding measurements he took of the tire tracks and comparisons between those measurements and the wheel base of certain vehicles violated Rule 701, Ala. R. Evid., because Investigator McCormick relied on information that was not within his personal knowledge. Vanpelt did not make this objection at trial; therefore, this issue is reviewed for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 Rule 701, Ala. R. Evid., states:
 

 “If the witness is not testifying as an expert, the witness’s testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness’s testimony or the determination of a fact in issue.”
 

 “The Advisory Committee’s Notes on the first portion of Rule 701, which requires the opinion to be rationally based on the witness’s perception, indicate that this is no more than a restatement of the firsthand knowledge rule, found in Ala. R. Evid. 602, tailored to opinions.”
 
 Musgrove Const., Inc. v. Malley,
 
 912 So.2d 227, 239-40 (Ala.Civ.App.2003) (citations and quotations omitted). Rule 602, Ala. R. Evid., states, in part:
 

 “A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence of personal knowledge may, but need not, consist of the witness’s own testimony.”
 

 Regarding the firsthand-knowledge requirement, “ ‘[w]hile the ordinary rule [Rule 701] confines the testimony of a lay witness to concrete facts within his knowledge or observation, the [c]ourt may rightly exercise a certain amount of latitude in permitting a witness to state his
 
 *68
 
 conclusions based upon common knowledge or experience.’ ”
 
 United, States v. Oliver,
 
 908 F.2d 260, 264 (8th Cir.1990)(quoting
 
 Batsell v. United States,
 
 217 F.2d 257, 262 (8th Cir.1954)). Further, “a ‘[preliminary determination of personal knowledge need not be explicit but may be implied from the witness’ testimony.’ G.S. 8C-1, Rule 602, commentary.”
 
 State v. Givens,
 
 95 N.C.App. 72, 79, 381 S.E.2d 869, 873 (1989).
 

 Investigator McCormick testified that there were tire tracks just off the edge of the roadway where Sandra’s body was found and he measured the width of those tracks. The following then occurred:
 

 “[PROSECUTOR]: Let me ask you, did you make any effort to compare those measurements to either a Pontiac Grand Am or to a Chevy Silverado pickup truck?
 

 “[MCCORMICK]: Yes, sir.
 

 “[PROSECUTOR]: Tell the ladies and the gentlemen of the jury what you did in those efforts.
 

 “[MCCORMICK]: We measured the width of the tire tracks — which we had two tracks off the side of the road in the grass — and they measured between four foot six inches and a little over six feet in the width of them. And we measured the width of the tire on a Silverado pickup. Now the width on the wheels on the pickup truck were wider than the tire tracks so we knew it was impossible for a pickup of that width to leave those tracks.
 

 “[PROSECUTOR]: You said you compared them to that vehicle, what were your results?
 

 “[MCCORMICK]: Well, the width of the truck was too wide to have left those tracks. It was impossible for that pickup to leave those tracks, the truck was too wide.
 

 “[PROSECUTOR]: All right. Let me ask you this, did you make some effort to compare them to the wheel base on a '94 Pontiac Grand Am?
 

 “[MCCORMICK]: Yes, sir.
 

 “[PROSECUTOR]: What did you do in that regard?
 

 “[MCCORMICK]: We had one of our agents in ABI and prior state trooper traffic homicide reconstructionist and he had access to computer software that had a list of wheel bases on just about any vehicle on the planet. And the width of the Pontiac was consistent with the width of the tire tracks that we found.”
 

 (R. 454-55.) During cross-examination, Investigator McCormick clarified his earlier testimony and stated that his measurements did not establish what vehicle or what kind of vehicle made the tracks. (R. 502-03.) He then explained that thousands of vehicles have the same tire width as the tire tracks that were found at the scene. (R. 502-03.)
 

 This court’s review of Investigator McCormick’s testimony indicates that he did not give improper lay-opinion testimony in violation of Rule 701, Ala. R. Evid. First, Investigator McCormick testified that he measured the tire width of a Chevrolet Silverado pick-up truck and measured the width of the tracks found at the scene where Sandra’s body was discovered. Based on the measurements he performed, Investigator McCormick testified that the tracks at the scene were narrower than those made by a Silverado. Accordingly, Investigator McCormick’s testimony regarding his comparison of the tire tracks at the scene and the tire width of a Silver-ado was based on his personal perception and was properly admitted.
 

 Second, contrary to Vanpelt’s assertions, Investigator McCormick did not give im
 
 *69
 
 proper lay-opinion testimony that the tire tracks were consistent with the tires on Sandra’s Pontiac Grand Am. Instead, Investigator McCormick testified that the tracks were consistent with information in the Alabama Bureau of Investigation’s (ABI) database regarding Pontiac Grand Am automobiles. Nothing in the record establishes that Investigator McCormick lacked knowledge of or failed to review himself the ABI wheel-base data. Therefore, this court cannot say that the circuit court’s failure to exclude Investigator McCormick’s testimony on this ground constituted plain error.
 
 Ex parte Walker,
 
 972 So.2d 737, 753 (Ala.2007) (holding that “plain error must be obvious on the face of the record”).
 

 Moreover, even if Investigator McCormick’s testimony regarding a Grand Am’s tire width was improper opinion testimony, its admission would not constitute plain error. Rule 45A, Ala. R.App. P. Although Investigator McCormick testified that the tire tracks were consistent with information the ABI has on Grand Am automobiles, he also testified that thousands of vehicles have that same wheel width. He then explained that the comparison of the tracks with the ABI’s information did not establish what specific vehicle or even what type of vehicle left the tracks. Based on the fact that Investigator McCormick testified that thousands of vehicles could have made the tracks and that he could not establish what vehicle left the tracks, his testimony regarding the tracks being consistent with a Grand Am did not have “an unfair prejudicial impact on the jury’s deliberations.”
 
 Ex parte Brown,
 
 11 So.3d 933, 938 (Ala.2008) (citations and quotations omitted).
 
 See
 
 Rule 45A, Ala. R.App. P. Therefore, this issue does not entitle Vanpelt to any relief.
 

 B.
 

 Vanpelt also argues that the circuit court erred in denying his motion for a mistrial made on the ground that Investigator McCormick’s tire-track-comparison results were not disclosed to him during discovery. Specifically, Vanpelt argues that the State’s alleged failure to disclose the results of Investigator McCormick’s tire track comparison violated Rule 16.1, Ala. R.Crim. P., and the circuit court’s discovery order. Initially, this court notes that “a mistrial is a drastic remedy, to be used only sparingly and only to prevent manifest injustice.”
 
 Ex parte Thomas,
 
 625 So.2d 1156, 1157 (Ala.1993).
 

 The record shows that after Investigator McCormick testified, the defense moved for a mistrial, arguing that the State did not disclose to them the results of his tire-track comparisons. The prosecutor asserted that the defense was given the measurements that Investigator McCormick had made of the tire tracks found at the scene and the State produced the discovery receipt signed by defense counsel. The State did not disclose to the defense that the tire width did not match the width of a Silverado.
 

 As the prosecutor stated during this discussion, the tire width of any vehicle was readily available to defense counsel.
 

 “Because the government’s duty to disclose covers only evidence within the government’s possession, the government is not obliged to furnish information already known by the defendant, or information, evidence, or material that is available or accessible to the accused, which the defendant could obtain by exercising reasonable diligence. Discovery is also not required where the defendant knows of the essential facts permitting one to take advantage of the evidence.”
 

 22A C.J.S.
 
 Criminal Law
 
 § 667. “Prosecutors have no duty under
 
 Brady v. Mary
 
 
 *70
 

 land,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose evidence available to the defense from another source.”
 
 Hurst v. State,
 
 469 So.2d 720, 723 (Ala.Crim.App.1985).
 
 See also Brown v. State,
 
 982 So.2d 565 (Ala.Crim.App.2006);
 
 McGowan v. State,
 
 990 So.2d 931 (Ala.Crim.App.2003);
 
 Gardner v. State,
 
 530 So.2d 250 (Ala.Crim.App.1987). Because defense counsel could have compared Investigator McCormick’s measurements with the wheel base of a Silverado, the State’s failure to disclose the fact that Investigator McCormick had made such a comparison did not violate the Constitution.
 

 Furthermore, neither circuit court’s discovery order nor Rule 16.1, Ala. R.Crim. P., required the State to disclose the results of Investigator Mccormick’s comparison. Although Rule 16.1 and the circuit court’s order required the State to disclose reports of tests made, there is no indication that Investigator McCormick made a report of his comparison. Nothing in the circuit court’s discovery order or in Rule 16.1, Ala. R.Crim. P., requires the State to create a report of comparisons made during an investigation.
 
 Cf. Knotts v. State,
 
 686 So.2d 431, 474 (Ala.Crim.App.1995) (holding that Rule 16 only allows access to reports that will be admitted at trial and does not require that reports be made);
 
 Rogers v. State,
 
 417 So.2d 241, 247 (Ala.Crim.App.1982) (detective’s original notes constitute work product and are privileged). Nor does the circuit court’s order or Rule 16.1, Ala. R.Crim. P., require the State to disclose every aspect of its investigation. Accordingly, the State’s failure to disclose the fact that Investigator McCormick compared his measurement of the tire tracks with a Silverado pickup truck did not violate Rule 16.1, Ala. R.Crim. P., or the circuit court’s discovery order.
 

 Because the State had no duty to disclose Investigator McCormick’s comparison of the tracks found in the grass near Sandra’s body with a Silverado pickup truck, no manifest injustice resulted from the State’s failure to do so.
 
 Ex parte Thomas,
 
 625 So.2d at 1157. Consequently, the circuit court did not abuse its discretion by denying Vanpelt’s motion for a mistrial.
 

 IX.
 

 Vanpelt next argues that the circuit court erred in allowing the State to present hearsay evidence. Specifically, he argues that the State’s medical examiner, Dr. Emily Ward, should not have been allowed to testify to the results of a toxicological report she had not prepared. He asserts that the report was inadmissible hearsay and that its admission violated his constitutional right to confront the witnesses against him. Vanpelt did not object when this evidence was introduced; therefore, this court’s review is limited to plain error.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 Dr. Ward testified that as part of the autopsy she sent a sample of Sandra’s blood to the toxicology department in her office; that the toxicology report was included in her official findings; and that the report showed that Sandra’s blood-alcohol level at the time of her death was .154. (R. 556.)
 

 The record also shows that in defense counsel’s opening statement counsel stated the following:
 

 “It is hard being an attorney to give an opening statement and say things about a deceased, but please understand, I’m just trying to do my job. I mean no offense to anybody. But she had problems with alcohol, ladies and gentlemen. If I have read the autopsy forensic reports correct for blood alcohol at the time of death was almost point
 
 *71
 
 one six, double the legal limit in the State of Alabama. Double the legal limit. She had a history of depression.”
 

 (R. 258.) Later during defense counsel’s opening statement, counsel stated:
 

 “Now, I submit to you with her blood alcohol level — let’s find out what was done to see — how she came to be that intoxicated. Who was she with? Where did it happen? When did it happen? What was the purpose?”
 

 (R. 263.) During closing argument, defense counsel suggested that the fact that Sandra’s clothes were in the trunk of her car suggests that she may have been on a “[s]ecret rendezvous [or a] [clandestine meeting” when she was murdered. (R. 955-56.)
 

 Assuming, without deciding, that the toxicology results were hearsay and their admission violated Vanpelt’s right to confront,
 
 [10]
 
 any error that might have occurred did not rise to the level of plain error. Here, defense counsel made the first reference to the victim’s blood-alcohol level, and counsel did not object when Dr. Ward testified to the toxicology results. Clearly, defense counsel viewed the results of the toxicology report as favorable and relevant to Vanpelt’s defense. That is, the fact that Sandra’s blood-alcohol level was twice the legal limit supported the defense’s argument that the State failed to establish that Sandra’s death did not occur during a drunken rendezvous with another man.
 

 In light of defense counsel’s comments and the fact that the toxicology report supported part of Vanpelt’s defense, this court cannot say that the admission of the toxicology results affected Vanpelt’s substantial rights or prejudicially impacted the jury’s deliberations.
 
 See Lee v. State,
 
 898 So.2d 790, 851-52 (Ala.Crim.App.2001);
 
 Ex parte Brown,
 
 11 So.3d at 938 (citations and quotations omitted) (holding that plain error must have an “unfair prejudicial impact on the jury’s deliberations”). Therefore, Vanpelt has failed to establish that the admission of the results of the report constituted plain error and is not entitled to any relief.
 

 X.
 

 Vanpelt next argues that the circuit court erred in allowing the State to introduce several letters that were identified as having been written by Vanpelt. He lists several different grounds in support of this contention.
 

 The record shows that the three contested items were introduced as State’s exhibits 89, 90, and 92. Richard Fisher identified exhibit 89 as correspondence that had been sent to him by Vanpelt. This exhibit contained three letters, the first letter, addressed to “Rick Brother,” asked for Rick’s help to get Vanpelt out of jail and money for his defense. Another letter, addressed to Ivy Reasin, states that Sandra forced Vanpelt to take out the life insurance policies and that he had left Sandra the weekend before her murder. Another letter, addressed to Chrisy and Mark, states that Sandra took advantage of him.
 

 State’s exhibit 90 was a letter addressed to Sandra Tucker — an inmate at the Laud-erdale County Detention Center at the time that the letter was written. Jackie Rikard, the administrator of the Lauder-dale County Detention Center, testified that she intercepted a letter that was addressed to Tucker, that the letter was
 
 *72
 
 signed “Vanpelt,” and that exhibit 90 was the letter she had intercepted. In this letter, Vanpelt states that he believed that Tucker’s boyfriend was involved in a murder-for-hire plot with his wife Sandra. He states that he discovered a picture of Tucker’s boyfriend on the memory card of his cell phone, and he believed that Sandra offered Tucker’s boyfriend money to kill him.
 

 State’s exhibit 92 was a correspondence between Vanpelt and Edward Parsons. Parsons testified that in January 2005, he was incarcerated at the Colbert County jail while Vanpelt was there, and he and Vanpelt communicated to each other by passing notes. He identified exhibit 92 as correspondence between him and Vanpelt. In the note, Vanpelt wrote that he would concoct a mock confession, that Parsons could write the confession in his handwriting, and that Parsons could get someone on the outside to mail the confession to police. He further writes that if the case is dismissed based on the mock confession he would file a “malicious prosecution” lawsuit against the county.
 

 State’s exhibit 93 was correspondence between Vanpelt and Parsons. In this note Vanpelt wrote that if the scheme worked he would give Parsons $75,000 of the insurance proceeds. Parsons identified this exhibit as having been written by Vanpelt and sent to him.
 

 State’s exhibits 94, 95, 96, 97, and 98, all relate to the mock confession. One is a confession that Vanpelt had written, and the other are notes relating to how Parsons is to go about getting the mock confession to police. In one note Vanpelt wrote, “I am Jacob M. Fowler, and I have done a terrible thing. I killed a woman when she attacked me. It was because of a failed attempt on the killing of her husband for the proceeds of a life insurance when he unexpectedly uncovered our plan and left that weekend. The husband is Kim Vanpelt and the wife is Sandra Van-pelt.” (C.R. 401.) Parsons identified all of these exhibits as having been written by Vanpelt and sent to him while they were in jail together.
 

 A.
 

 Vanpelt first asserts that the letters should not have been introduced because the State failed to lay the proper predicate. Specifically, Vanpelt argues that no witness testified concerning the chain of custody for any of the letters.
 

 Initially, this court notes Vanpelt never argued that there was no chain of custody for exhibits 89 and 90. Accordingly, this court reviews Vanpelt’s argument as to those exhibits for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P. Vanpelt did object to the admittance of State’s exhibits 92 through 98 on the ground that there were no “proper predicate[s].” This court has held that an objection that states “improper predicate” and “that is not the proper way to do that” was sufficient to preserve an issue concerning the chain of custody.
 
 See Jennings v. State,
 
 588 So.2d 540, 542 (Ala.Crim.App.1991). Accordingly, this court reviews Vanpelt’s argument as to State’s exhibits 92 thorough 98 as preserved error.
 

 The Alabama Supreme Court in
 
 Ex parte Holton,
 
 590 So.2d 918 (Ala.1991), addressed the requirements for a chain of custody:
 

 “Proof of [an] unbroken chain of custody is required in order to establish sufficient identification of the item and continuity of possession, so as to assure the authenticity of the item.
 
 [Ex parte Williams,
 
 548 So.2d 518, 520 (Ala.1989).] In order to establish a proper chain, the State must show to a ‘reasonable probability that the object is in the same condition as, and not substantially
 
 *73
 
 different from, its condition at the commencement of the chain.’
 
 McCray v. State,
 
 548 So.2d 573, 576 (Ala.Crim.App.1988).”
 

 590 So.2d at 919-20. Later in
 
 Hale v. State,
 
 848 So.2d 224 (Ala.2002), the Supreme Court reexamined its holding in
 
 Holton
 
 after the 1995 codification of § 12-21-13, Ala.Code 1975. The Supreme Court stated:
 

 “Section 12-21-13, Ala.Code 1975, provides
 

 “ ‘Physical evidence
 
 connected with or collected in
 
 the investigation of a crime shall not be excluded from consideration by a jury or court due to a failure to prove the chain of custody of the evidence. Whenever a witness in a criminal trial identifies a physical piece of evidence
 
 connected with or collected in the investigation of a crime,
 
 the evidence shall be submitted to the jury or court for whatever weight the jury or court may deem proper. The trial court in its charge to the jury shall explain any break in the chain of custody concerning the physical evidence.’
 

 “(Emphasis added.) This statute, by its terms, applies only to ‘[pjhysical evidence connected with or collected in the investigation of the charged crime. To invoke the statute the proponent of the evidence must first establish that the proffered physical evidence is in fact the very evidence ‘connected with or collected in the investigation.’ Moreover,
 

 “ ‘[i]n
 
 Land v. State,
 
 678 So.2d 201 (Ala.Cr.App.1995), aff'd, 678 So.2d 224 (Ala.1996), a case which appears to rely on § 12-21-13, this court ruled that
 
 where
 
 a witness can specifically identify the evidence, and
 
 its condition is not an issue in the case, then the State is not required to establish a complete chain of custody
 
 in order for the evidence to be admitted into evidence. We stated: “The eyeglasses were admissible without establishing a chain of custody because [the testifying officer] was able to specifically identify them, and their condition was not an issue in the case.”
 
 Land,
 
 678 So.2d at 210....”’
 

 848 So.2d at 228 (emphasis in original and some citations omitted).
 

 Here, each of the exhibits was physical evidence that was collected in connection with the investigation of Sandra’s murder. Further, each exhibit was properly identified by a witness and the condition of the exhibits was not in issue. Accordingly, pursuant § 12-21-13, Ala.Code 1975, the exhibits were properly admitted.
 

 B.
 

 Vanpelt next argues that the State failed to establish that the letters were written by Vanpelt. Specifically, he asserts that the State did not comply with Rule 901, Ala. R. Evid.
 

 There was no objection to the testimony concerning the authentication of State’s exhibits 89 and 90. Therefore, this court reviews this claim for plain error.
 
 See
 
 Rule 45A, Ala. R.App. P. Vanpelt did object to the authentication of exhibits 92 through 98; therefore, his argument relating to these letters is reviewed as preserved error.
 

 Rule 901, Ala. R. Evid., states:
 

 “(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 

 “(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authenti
 
 *74
 
 cation or identification conforming with the requirements of this rule:
 

 “(2)
 
 Nonexpert Opinion on Handwriting.
 
 Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.”
 

 In discussing Rule 901, Ala. R. Evid., and the common law in Alabama,
 
 McElroy’s Alabama Evidence
 
 states:
 

 “The traditional rule has been that a lay witness, who testifies to having seen a specified person write by hand and to an acquaintance with and belief that the witness knows such person’s handwriting, may testify that a specified piece of handwriting seen by, or now exhibited to, the witness is or is not the handwriting of such person. This historic principle is affirmed in the Alabama Rules of Evidence provision that authentication may be based upon ‘[njonpexert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.’
 

 “This rule holds true even though the witness saw such person write only one time, long ago and the witness’ memory of such person’s handwriting has grown faint. The witness does not, in fact, have to be certain absolutely that he knows such person’s handwriting.”
 

 Charles W. Gamble,
 
 McElroy’s Alabama Evidence
 
 § 111.01(1) (5th ed.1996)(foot-notes omitted).
 
 See Gilliland v. Dobbs,
 
 234 Ala. 364, 367, 174 So. 784, 786 (1937) (“This witness had testified that she corresponded with the decedent, sending letters by mail directed to her and received replies purporting to have been written by her. This testimony is prima facie sufficient to allow the witness to testify as to the signature of the decedent.”).
 

 The State presented the testimony of Patti Lawson, Vanpelt’s former fiancée, who had been in a romantic relationship with Vanpelt for four years. She testified that she was familiar with Vanpelt’s handwriting, that he had written to her, and that she could identify his writing style. Lawson testified that exhibits 89 and 90 were written by Vanpelt. Edward Parsons testified that he was familiar with Vanpelt’s handwriting because he had seen him write notes. Parsons further testified that Vanpelt wrote the portions of exhibit 92 that were attributable to him and that Vanpelt wrote exhibits 93 through 98. Lawson’s and Parsons’s testimony was sufficient to authenticate the writings; therefore, there was no violation of Rule 901, Ala. R. Evid.
 

 C.
 

 Vanpelt also asserts that his constitutional rights were violated when the State obtained a handwriting sample from him without his attorney being present. Specifically, he asserts that the State’s use of a letter that was supposedly written by Vanpelt to obtain a writing sample from him amounted to an interrogation; therefore, Vanpelt’s admission to police that he authored the letters was inadmissible. Vanpelt did not raise this argument at trial; therefore, this court reviews it for plain error only.
 
 See
 
 Rule 45A, Ala. RApp. P.
 

 Investigator McCormick testified that on July 25, 2005, he and another officer went to visit Vanpelt for the purpose of complying with a court order to obtain a handwriting sample from Vanpelt. Investigator McCormick further stated that he did not ask Vanpelt any questions. He explained that he only had Vanpelt copy statements from letters that Vanpelt had supposedly written for comparison purposes. According to Investigator McCormick, while Vanpelt was copying the
 
 *75
 
 contents of the letters, he spontaneously admitted that he was the author of the original letters.
 

 “The right to counsel under the Sixth Amendment applies only to ‘critical stages’ of the proceedings against the defendant.
 
 United States v. Wade,
 
 388 U.S. 218, 224-25, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Critical stages may include, among other things, post-indictment line-ups,
 
 Kirby v. Illinois,
 
 406 U.S. 682, 690, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), arraignment,
 
 Hamilton v. Alabama,
 
 368 U.S. 52, 53, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), and entering a plea,
 
 White v. Maryland,
 
 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), but do not include the taking of handwriting exemplars,
 
 Gilbert v. California,
 
 388 U.S. 263, 267, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).”
 

 United States v. Lewis,
 
 483 F.3d 871, 873-74 (8th Cir.2007).
 
 See State v. Moody,
 
 208 Ariz. 424, 445, 94 P.3d 1119, 1140 (2004) (“The taking of non-testimonial physical evidence ... is not a critical stage of the proceedings.”);
 
 Miller v. State,
 
 693 N.E.2d 602, 605 (Ind.Ct.App.1998) (“The right to counsel attaches only to critical stages of criminal proceedings ... An administrative procedure such as the taking of a handwriting exemplar is not a critical stage; accordingly, counsel does not have to be present.”);
 
 United States v. Daughenbaugh,
 
 49 F.3d 171, 174 (5th Cir.1995) (“A handwriting sample is nontestimonial evidence beyond the scope of the right against self-incrimination.”);
 
 People v. Burhans,
 
 166 Mich.App. 758, 764, 421 N.W.2d 285, 288-89 (1988) (“the right to counsel does not extend to gathering of physical evidence from defendant, such as blood tests or handwriting samples, because there is minimal risk of harm due to attorney absence.”);
 
 United States v. Hayes,
 
 388 F.Supp. 470, 474 (W.D.Pa.1975) (“Defendant ... claims error in the admission into evidence of a handwriting exemplar ... in which [defendant] copies, at the direction of the government agent, the text of incriminating letters alleged to have been written by him. We find no error in submitting this exemplar to the jury.”). Based on the foregoing caselaw, this court concludes that there was no error in obtaining the handwriting sample without Vanpelt’s attorney being present.
 

 Furthermore, Vanpelt’s challenge to the admission of the statement he made while Investigator McCormick was obtaining his handwriting sample is without merit. As the Supreme Court explained in
 
 Kuhlmann v. Wilson,
 
 477 U.S. 436, 459, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), “the Sixth Amendment is not violated whenever — by luck or happenstance— the State obtains incriminating statements from the accused after the right to counsel has attached.... ” (citations and quotations omitted). That is, spontaneous statements made after a defendant’s right to counsel has attached do not violate the Sixth Amendment.
 
 United States v. Lozada-Rivera,
 
 177 F.3d 98, 106 (1st Cir.1999).
 
 Cf. Sheely v. State,
 
 629 So.2d 23, 29 (Ala.Crim.App.1993) (spontaneous statement did not violate right to counsel);
 
 Eggers v. State,
 
 914 So.2d 883, 902 (Ala.Crim.App.2004) (same). When a defendant makes a spontaneous statement during an exchange with law enforcement, then suppression is not appropriate unless “the defendant ... demonstrate^] that the police ... took some action ... that was designed deliberately to elicit incriminating remarks.”
 
 Kuhlmann,
 
 477 U.S. at 459.
 

 The record establishes that Investigator McCormick, pursuant to a court order, went to Vanpelt to obtain a handwriting exemplar. While Vanpelt was copying the letters purportedly written by Vanpelt, Vanpelt asserted, without provocation, that
 
 *76
 
 he had written the letters he was copying. Nothing in the record suggests that Investigator McCormick questioned Vanpelt or requested that Vanpelt copy the letters with the intent of eliciting an incriminating statement. Accordingly, Vanpelt has failed to meet his burden of establishing that Investigator McCormick’s actions were “designed deliberately to elicit incriminating remarks.”
 
 Kuhlmann,
 
 477 U.S. at 459. Therefore, he has failed to establish that the admission of his statement was error, much less plain error, and he is not entitled to any relief.
 

 XI.
 

 Vanpelt next argues that the circuit court erred by overruling his motion for a mistrial after one juror had contact with a deputy sheriff. Specifically, he argues that he was denied his right to an impartial jury because one of the jurors had unauthorized contact with a deputy sheriff during the trial.
 

 The record shows that during the penalty phase one of the jurors informed the court that he and a deputy, whom he identified by name as “Cody,” had a brief encounter during a break. Specifically, the juror stated, “I know Cody, one of the deputies, I did not know he was a deputy until today. And he just tried to shake my hand and say something as I was walking by him. He was walking escorting two prisoners through this morning.... Nothing was said. It was just hi and he called my name.” (R. 1046.) Based on this brief encounter, Vanpelt asserts that he was denied a fair and impartial jury. To support his proposition, Vanpelt cites
 
 Ex parte Pierce,
 
 851 So.2d 606 (Ala.2000).
 

 In
 
 Pierce,
 
 the Alabama Supreme Court, relying on
 
 Turner v. Louisiana,
 
 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), held a defendant’s right to a fair and impartial jury is violated when a law-enforcement officer, who was also a key state witness, had “close and continual contact with the jury.” 851 So.2d at 609. During Pierce’s five-day trial in which the jury was sequestered, Sheriff Whittle, a key prosecution witness, drove one of the cars used to transport the jurors to and from their motel, which was 20 miles away from the court, and ate lunch with the jury each day.
 
 Id.
 
 at 609. Based on this pervasive and continual contact with a key prosecution witness, the Alabama Supreme Court held that Pierce’s right to a fair and impartial jury had been violated.
 
 Id.
 
 at 608-10. The court further held that, due to the pervasiveness of the contact, prejudice is presumed.
 
 Id.
 
 at 612.
 

 In
 
 Minor v. State,
 
 this court distinguished
 
 Pierce
 
 and
 
 Turner
 
 and held that when a juror has outside contact with an individual who is not a key witness and when that contact is not continual, then “[i]n order to be entitled to a mistrial due to contact by a juror with [the] witnesses or others, prejudice must be shown.” 914 So.2d 372, 413 (Ala.Crim.App.2004) (citations and quotations omitted). This court then explained that:
 

 “[i]n order to show prejudice in a case such as this one involving misconduct by a non-juror in speaking to a juror, a defendant must establish only that the verdict might have been affected by the juror’s outside contact with the other person.... [T]his might-have-influenced-the-verdict standard nevertheless requires more than a mere showing that the juror was exposed to outside influences.”
 

 Minor,
 
 914 So.2d at 413.
 

 In contrast to
 
 Pierce
 
 and
 
 Turner,
 
 there is absolutely no indication that the identified deputy was a witness, much less a key witness, in the case against Vanpelt. Further, the brief encounter described by the juror (calling his name and saying “hi”)
 
 *77
 
 falls far short of the continual contact condemned in
 
 Pierce
 
 and
 
 Turner
 
 wherein prejudice will be presumed. Therefore, Vanpelt is required to show that “the verdict might have been affected by the juror’s outside contact with the other person.”
 
 Id.
 
 Vanpelt, however, has only shown that a juror encountered the deputy during which the two exchanged pleasantries. (R. 1046.)
 

 Because Vanpelt has failed to establish that the brief encounter between a juror and a deputy sheriff might have affected the juror’s verdict, he has not shown that the circuit court abused its discretion by overruling his motion for a mistrial.
 
 Minor,
 
 914 So.2d at 411-12. Therefore, this issue does not entitle Vanpelt to any relief.
 

 XII.
 

 Vanpelt next argues that the circuit court made numerous “erroneous rulings.” He lists four different grounds in support of this assertion.
 

 A.
 

 First, Vanpelt argues that the circuit court erred in not declaring a mistrial or imposing another “adequate” remedy when one of the jurors was sleeping during part of the cross-examination of the medical examiner.
 

 The following occurred after the medical examiner testified:
 

 “[DEFENSE COUNSEL]: Could I note something for the record?
 

 “[THE COURT]: Yes.
 

 “[DEFENSE COUNSEL]: I have been watching the jury and the juror on the front row would be seated to your left was asleep during cross-examination. I would just like to note that for the record.
 

 “[PROSECUTOR]: I watched him, too.
 

 “[THE COURT]: But, anyway, that is the reason I think we need to go ahead and take a break now.”
 

 (R. 584.) There was no objection or any request by counsel to either excuse this juror or declare a mistrial. Accordingly, this issue is reviewed for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 The Delaware Supreme Court has aptly summarized the law regarding sleeping jurors as follows:
 

 “To warrant a new trial, defendants must demonstrate the juror misconduct resulted in prejudice that deprived them of the right to a fair trial. To prevail on a sleeping-juror claim, the defendant must show that prejudice resulted from the jury ignoring ‘essential portions of the trial.’ Thus, some courts have held that a new trial is not warranted where a juror slept through the jury charge, or even the ‘critical presentation of [defendant’s] evidence and the cross-examination of witnesses for the prosecution.’ ”
 

 Durham v. State,
 
 867 A.2d 176, 179-80 (Del.2005) (footnotes omitted).
 
 See Commonwealth v. Dancy,
 
 75 Mass.App.Ct. 175, 181, 912 N.E.2d 525, 582 (2009) (“[T]he judge has discretion regarding the nature of the intervention and the remedies for any sleeping that has occurred. If the sleeping is observed at the outset or when the juror is beginning to ‘nod off,’ it is likely that a break or a stretch will suffice.”);
 
 State v. Sanders,
 
 92 Ohio St.3d 245, 253, 750 N.E.2d 90, 107 (2001) (citations and quotations omitted) (“A trial court ‘has considerable discretion in deciding how to handle a sleeping juror.’);
 
 United States v. Freitag,
 
 230 F.3d 1019, 1023 (7th Cir.2000) (holding that the district court did not abuse its discretion in retaining a possibly sleeping juror because the judge had noticed inattentiveness on only one occasion).
 

 
 *78
 
 Here, Vanpelt has not established that the juror’s falling asleep resulted in prejudice that deprived him a fair trial. The record indicates that the juror may have slept through part of the cross-examination of the medical examiner; however, the victim’s cause of death was not contested at trial. Because cause of death was not contested, Vanpelt suffered no prejudice when one juror slept only during a portion of the medical examiner’s testimony. Accordingly, no error, much less plain error, occurred when the circuit court failed to sua sponte declare a mistrial.
 

 B.
 

 Vanpelt next argues that the circuit court erred in allowing the State to introduce the contents of a label from a cleaning solution that was found in the Vanpelts’ mobile home. Specifically, the State introduced the contents of a “Zout oxy” cleaning solution label that stated that the solution could remove blood.. According to Vanpelt, the contents of the label constitutes hearsay; therefore, the circuit court erroneously allowed its admission. There was no objection when this evidence was presented; thus, this court reviews this claim for plain error.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 Contrary to Vanpelt’s assertion, the statements contained on the label of the cleaning solution found in the Vanpelts’ mobile home did not constitute hearsay. “ ‘ “Hearsay” is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.’ ”
 
 Belisle v. State,
 
 11 So.3d 256, 298 (Ala.Crim.App.2007) (quoting Rule 801(c), Ala. R. Evid.). “A statement offered for a reason other than to establish the truth of the matter asserted therein is not hearsay.”
 
 Deardotff v. State,
 
 6 So.3d 1205, 1216 (Ala.Crim.App.2004) (citing
 
 Smith v. State,
 
 795 So.2d 788, 814 (Ala.Crim.App.2000)). As the State correctly asserts, the words in the label of the cleaning solution were not offered to prove the truth of the matter asserted, i.e., that the solution would remove blood. Instead, the label was offered to show that Vanpelt, who purchased the cleaning solution shortly after he reported his wife missing, believed that the solution would remove blood. (R. 465-66.) Because the content of the label was not offered to prove the truth of the matter asserted, it did not constitute hearsay, and its admission was not error.
 
 Ex parte Hunt,
 
 744 So.2d 851, 855-57 (Ala.1999).
 

 C.
 

 Vanpelt next argues that the circuit court erred in allowing a State witness, Investigator Jimmy Collier, to remain in the courtroom after the defense had invoked the Rule.
 
 [11]
 

 The record shows that at the beginning of trial defense counsel sought to invoke the Rule. The Court did not definitively issue a ruling on the motion but stated: “And I will depend upon ya’ll also to notice if any of your witnesses come in the courtroom and ask them to leave.” (R. 241.) During the cross-examination of Investigator Collier, defense counsel asked “Jimmy, were you in here when Investigator [Tim] Vandiford testified?” Collier responded that he was.
 

 
 *79
 
 In
 
 Weaver v. State,
 
 710 So.2d 480, 484 (Ala.Crim.App.1997), this court explained that “Rule 9.3(a), Ala. R.Crim.P., authorizes the trial court to exclude potential witnesses from the courtroom prior to or during proceedings.” Whether to exclude witnesses from the trial and whether to exempt certain witnesses from the Rule is a matter entirely within the circuit court’s discretion and its decision will not be overturned absent a showing of abuse of discretion.
 
 Id.
 
 Further, this court has recognized that “[i]nvestigators or police officers commonly are exempted from the rule.”
 
 Id.
 
 (citations and quotations omitted). As the Alabama Supreme court has recognized, “Alabama appellate courts have time and again refused to hold it an abuse of discretion on the part of a trial court to allow a sheriff, police chief, or similarly situated person who will later testify to remain in the courtroom during trial.”
 
 Ex parte Lawhorn,
 
 581 So.2d 1179, 1181 (Ala.1991) (citations and quotations omitted).
 

 Vanpelt has not established that the circuit court’s failure to exclude Investigator Collier from the courtroom was an abuse of discretion. He has not pointed to anywhere in the record that indicates that there was a particular need to exclude Investigator Collier. He has not directed this court to anywhere in the record that indicates that Investigator Collier acquired knowledge from being in the courtroom that he otherwise did not have or that Investigator Collier altered his testimony based on the fact that he was exempted from the Rule. Accordingly, this court holds that it was not “an abuse of discretion on the part of a trial court to allow [Investigator Collier] to remain in the courtroom during trial.”
 
 Id.
 

 D.
 

 Vanpelt also argues that the circuit court erred in denying his motion to allow Vanpelt to view the scene where Sandra’s body was found. Specifically, Vanpelt argues that “[g]iven the heightened need for reliability in a capital case in which death is a possible punishment, ... Courts should make every reasonable effort to provide the defendant with the opportunity to meaningfully participate in his defense.” (Vanpelt’s Brief at 113.)
 

 When this motion was discussed, the State indicated that it no longer had control of the scene. Defense counsel stated that counsel wanted Vanpelt to be with them when they viewed the scene. They gave no specific grounds for this motion. The circuit court indicated that an investigator would accompany Vanpelt’s attorneys to the crime scene. The circuit court then denied the motion.
 

 Whether to allow a person charged with a crime to visit the crime scene is a matter within the discretion of the circuit court and will not be overturned absent a showing that the court abused its discretion.
 
 Swicegood v. State,
 
 448 So.2d 433, 435 (Ala.Crim.App.1983). In
 
 Mason v. State,
 
 768 So.2d 981, 1004 (Ala.Crim.App.1998), this court held that the circuit court did not abuse its discretion by denying the appellant’s motion to visit the crime scene because the appellant only offered the circuit court a general assertion that “his presence at the scene was necessary to assist his counsel in the investigation of the crime” and he failed to specifically explain how his defense would be prejudiced if he were not allowed to view the scene.
 

 Like
 
 Mason,
 
 Vanpelt has offered only a general assertion that visiting the crime scene would aid him in participating in his defense. He has not argued that he did not have access to photographs of the crime scene or some other equivalent that would have substituted for a actual visit to
 
 *80
 
 the scene.
 
 See Dorsey v. State,
 
 881 So.2d 460, 476 (Ala.Crim.App.2001), reversed on other grounds,
 
 Ex parte Dorsey,
 
 881 So.2d 533 (Ala.2003). Further, Vanpelt “does not on appeal, offer any compelling reason why his presence at the crime scene was necessary nor did he offer any specific explanation as to how his defense was prejudiced by his not being allowed to view the scene.”
 
 Minor v. State,
 
 780 So.2d 707, 727 (Ala.Crim.App.1999), reversed on other grounds,
 
 Ex parte Minor,
 
 780 So.2d 796 (Ala.2000). Accordingly, Vanpelt has not established that the circuit court abused its discretion by denying his motion to visit the crime scene.
 

 XIII.
 

 Vanpelt argues that the circuit court erred in denying his motion to exclude prejudicial photographs. Specifically, Vanpelt asserts that the photographs of Sandra’s dead body were gruesome and cumulative and should not have been admitted into evidence.
 

 Alabama courts have long recognized that photographs depicting the crime scene and the wounds of the victims are relevant and admissible.
 
 See Stallworth v. State,
 
 868 So.2d 1128, 1151 (Ala.Crim.App.2001)(quoting
 
 Land v. State,
 
 678 So.2d 201, 207 (Ala.Crim.App.1995)) (“ ‘The courts of this state have repeatedly held that photographs that accurately depict the crime scene and the nature of the victim’s wounds are admissible despite the fact that they may be gruesome or cumulative.’ ”);
 
 Ward v. State,
 
 814 So.2d 899, 906 (Ala.Crim.App.2000) (quoting
 
 Siebert v. State,
 
 562 So.2d 586, 599 (Ala.Crim.App.1989)) (“ ‘The same rule applies for videotapes [as for] photographs.’ ”). This court has explained:
 

 “ ‘Generally, photographs are admissible into evidence in a criminal prosecution “if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge.” ’
 
 Bankhead v. State,
 
 585 So.2d 97, 109 (Ala.Crim.App.1989), remanded on other grounds, 585 So.2d 112 (Ala.1991), aff'd on return to remand, 625 So.2d 1141 (Ala.Crim.App.1992), rev’d, 625 So.2d 1146 (Ala.1993), quoting
 
 Magwood v. State,
 
 494 So.2d 124, 141 (Ala.Crim.App.1985), aff'd, 494 So.2d 154 (Ala.1986). ‘Photographic exhibits are admissible even though they may be cumulative, demonstrative of undisputed facts, or gruesome.’
 
 Williams v. State,
 
 506 So.2d 368, 371 (Ala.Crim.App.1986) (citations omitted). In addition, ‘photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors.’
 
 Ex parte Siebert,
 
 555 So.2d 780, 784 (Ala.1989). ‘This court has held that autopsy photographs, although gruesome, are admissible to show the extent of a victim’s injuries.’
 
 Ferguson v. State,
 
 814 So.2d 925, 944 (Ala.Crim.App.2000), aff'd, 814 So.2d 970 (Ala.2001). ‘ “[Ajutopsy photographs depicting the character and location of wounds on a victim’s body are admissible even if they are gruesome, cumulative, or relate to an undisputed matter.” ’
 
 Jackson v. State,
 
 791 So.2d 979, 1016 (Ala.Crim.App.2000), quoting
 
 Perkins v. State,
 
 808 So.2d 1041, 1108 (Ala.Crim.App.1999), aff'd, 808 So.2d 1143 (Ala.2001), judgment vacated on other grounds, 536 U.S. 953 (2002), on remand to, 851 So.2d 453 (Ala.2002).”
 

 Brooks v. State,
 
 973 So.2d 380, 393 (Ala.Crim.App.2007).
 

 This court has reviewed the crime scene and autopsy photographs about which Van-pelt complains and holds that they were
 
 *81
 
 relevant and admissible to show a part of the scene of the crime and the extent of the victim’s injuries. Further, although unpleasant, the photographs were not unduly gruesome. Therefore, the circuit court did not commit any error in allowing the photographs to be admitted at trial.
 

 XIV.
 

 Vanpelt next argues that prosecu-torial misconduct denied him a fair and reliable trial. Specifically, he asserts that the prosecutor committed reversible error by vouching for the police investigation. Vanpelt did not object when the prosecutor made the challenged comment; therefore, this issue is reviewed for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 In
 
 Belisle v. State,
 
 11 So.3d 256 (Ala.Crim.App.2007), this court reiterated the principles applied when reviewing a prosecutor’s alleged improper comment as follows:
 

 “ ‘ “In reviewing allegedly improper prosecutorial argument, we must first determine if the argument was, in fact, improper. If we determine that the argument was improper, the test for review is not whether the comments influenced the jury, but whether they might have influenced the jury in arriving at its verdict.”
 
 Smith v. State,
 
 698 So.2d 189, 202-03 (Ala.Cr.App.1996), aff'd, 698 So.2d 219 (Ala. 1997), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997) (citations omitted);
 
 Bush v. State,
 
 695 So.2d 70, 131 (Ala.Cr.App.1995), aff'd, 695 So.2d 138 (Ala.1997), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997) (citations omitted). “The relevant question is whether the prosecutor’s comments ‘so infected the trial with unfairness as to make the resulting conviction a denial of due process.’ ”
 
 Darden v. Wainwright,
 
 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986), quoting
 
 Donnelly v. DeChristoforo,
 
 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Comments made by the prosecutor must be evaluated in the context of the whole trial.
 
 Duren v. State,
 
 590 So.2d 360, 364 (Ala.Cr.App.1990), aff'd, 590 So.2d 369 (Ala.1991), cert. denied, 503 U.S. 974, 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992). “Prose-cutorial misconduct is subject to a harmless error analysis.”
 
 Bush v. State,
 
 695 So.2d at 131 (citations omitted);
 
 Smith v. State,
 
 698 So.2d at 203 (citations omitted).’
 

 “Simmons v. State,
 
 797 So.2d 1134, 1161-62 (Ala.Crim.App.1999) (opinion on return to remand). We must view the challenged arguments in the context of the entire trial and not in the abstract. See
 
 Duren v. State,
 
 590 So.2d 360 (Ala.Crim.App.1990);
 
 Whitlow v. State,
 
 509 So.2d 252 (Ala.Crim.App.1987). It is proper for a prosecutor to argue any legitimate inference that may be drawn from the evidence. See
 
 Snyder v. State,
 
 893 So.2d 488 (Ala.Crim.App.2003).”
 

 11 So.3d at 302.
 

 “ ‘ “While this failure to object does not preclude review in a capital case,
 
 it does weigh against any claim of prejudice” Ex parte Kennedy,
 
 472 So.2d [1106,] at 1111 [ (Ala.1985) ] (emphasis in original). “This court has concluded that the failure to object to improper prosecutorial arguments ... should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.”
 
 Johnson v. Wainwright,
 
 778 F.2d 623, 629 n. 6 (11th Cir.1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987).’ ”
 

 
 *82
 

 Ex parte Windsor,
 
 683 So.2d 1042, 1061 (Ala.1996) (quoting
 
 Kuenzel v. State,
 
 577 So.2d 474, 489 (Ala.Crim.App.1990)).
 

 Vanpelt challenges the following comment that the prosecutor made in his guilt-phase rebuttal closing argument:
 

 “Now, first of all, I want to thank Jimmy Collier, Marc McCormick, all the police work that was — tremendous police work, tremendous police work. [Defense counsel] talking about what all they did not do. It was one of the best investigations I have ever seen. I have been practicing law for about nineteen years and the way they brought this case together and the way the forensic people brought it to you, tremendous work. You should be proud that we have people in our state that are as good as they are and you saw them from the witness stand this week.”
 

 (R. 966-67.) The State asserts that the prosecutor’s comment was a reply to an argument made by defense counsel. Specifically, the State asserts that the prosecutor was replying to the following argument made by defense counsel:
 

 “There is tremendous pressure within the community to quickly, quickly find the killer. Arrest the killer, get that pressure off. Protect the public. And they said we focused on him immediately and we never looked anywhere else. That is a rush to judgment. You cannot rush to a decision as important as you have to make. He was the only suspect. The only person ever investigated.
 

 “I suggest to you that there was evidence that had it been pursued the way it could have been and should have been that could have exonerated this man. It was ignored.”
 

 (R. 953.) This court agrees.
 

 It is well settled that “[a] prosecutor has the right to ‘reply in kind’ to statements made by defense counsel in the defense’s closing argument.”
 
 Newton v. State,
 
 [Ms. CR-05-1517, Oct. 2, 2009] — So.3d —,—(Ala.Crim.App.2009) (citations and quotations omitted). “ ‘When the door is opened by defense counsel’s argument, it swings wide, and a number of areas barred to prosecutorial comment will suddenly be subject to reply.’ ”
 
 Davis v. State,
 
 494 So.2d 851, 855 (Ala.Crim.App.1986) (quoting DeFoor,
 
 Prosecutorial Misconduct in Closing Argument,
 
 7 Nova L.J. 443, 469-70 (1982-83)). Further, a prosecutor’s rebuttal argument is “viewed as having been made in the heat of the debate, and such a remark is usually valued by the jury at its true worth and not expected to become a factor in the formulation of the verdict.”
 
 McGowan v. State,
 
 990 So.2d 931, 974 (Ala.Crim.App.2003).
 

 The Supreme Court of Ohio in addressing a similar argument stated:
 

 “The prosecutor did assert that the police ‘did an outstanding job’ in their investigation, and thereby improperly vouched for the police. However, we do not find that prejudicial error resulted from the prosecutor’s remarks, particularly in light of defense counsel’s repeated criticism of the police investigation. Where a prosecutorial statement not supported by admitted evidence is ‘short, oblique, and justified as a reply to defense arguments and elicits no contemporaneous objection, there is no prejudicial error.’
 
 State v. Lott
 
 (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293, 300.”
 

 State v. Mason,
 
 82 Ohio St.3d 144, 162, 694 N.E.2d 932, 952 (1998).
 
 See also State v. Amin,
 
 839 So.2d 262, 270 (La.Ct.App.2003) (prosecutor’s argument that “[t]he police did an unbelievable job in this case. This is the best example of police work I’ve ever seen in my life in my career,” did not constitute reversible error.).
 

 
 *83
 
 Like
 
 Mason,
 
 defense counsel repeatedly attacked the sufficiency of police investigation. 82 Ohio St.3d at 162, 694 N.E.2d at 952. Further, the prosecutor’s rebuttal statement was short and in direct response to the defense’s attack.
 
 Id.
 
 Accordingly, the prosecutor’s comment did not “so in-fecte ] the trial with unfairness as to make [Vanpelt’s] resulting conviction a denial of due process,”
 
 Darden v. Wainwright,
 
 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (citations and quotations omitted). Therefore, Vanpelt has failed to establish that the prosecutor’s comment rises to the level of plain error and is not entitled to any relief.
 

 XV.
 

 Vanpelt next argues that the circuit court’s jury instructions on reasonable doubt were erroneous and violated the United States Supreme Court’s holding in
 
 Cage v. Louisiana,
 
 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). Specifically, Vanpelt argues that the circuit court lessened the State’s burden of proof when it defined reasonable doubt as “an actual doubt, and not a mere guess or [surmise] [or] forced or capricious doubt.” (Vanpelt’s Brief at 103.) Vanpelt did not object to the circuit court’s instruction at trial; therefore, this issue is reviewed for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 In
 
 Cage,
 
 the Supreme Court held that a Louisiana trial court’s reasonable-doubt instruction impermissibly suggested a higher degree of doubt than is required for acquittal under the reasonable-doubt standard of
 
 In re Winship,
 
 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The instruction in
 
 Cage
 
 provided, in relevant part:
 

 “If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant’s guilt, it is your duty to give him the benefit of the doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture.
 
 It must be such doubt as would give rise to a grave uncertainty,
 
 raised in your mind by reasons of the unsatisfactory character of the evidence or the lack thereof. A reasonable doubt is not a mere possible doubt.
 
 It is an actual substantial doubt.
 
 It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a
 
 moral certainty.”
 

 Cage,
 
 498 U.S. at 40 (emphasis in original). The
 
 Cage
 
 Court determined that this reasonable-doubt instruction impermissibly suggested a higher degree of doubt than is required for acquittal under the reasonable-doubt standard established in
 
 In re Winship,
 
 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Specifically, the
 
 Cage
 
 Court held that “[i]t is plain to us that the words ‘substantial’ and ‘grave,’ as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard.”
 
 Cage,
 
 498 U.S. at 41.
 

 In
 
 Smith v. State,
 
 this court reviewed a similar issue and held as follows:
 

 “Although the trial court did refer to a reasonable doubt as an ‘actual doubt,’ it did not state that the doubt must be ‘grave’ or ‘substantial,’ as the faulty charge in
 
 Cage
 
 instructed. See
 
 Cage,
 
 498 U.S. at 40, 111 S.Ct. at 328 (holding that the terms ‘grave’ and ‘substantial’ suggest a higher degree of doubt than
 
 *84
 
 that actually required to acquit). Furthermore, the trial court’s instruction that the doubt could not be ‘fanciful,’ ‘vague,’ ‘speculative,’ ‘arbitrary,’ or ‘merely possible’ follows the language of the Alabama Pattern Jury Instruction: Criminal on a reasonable doubt charge. The fact that the trial court followed an accepted pattern jury instruction weighs heavily against any finding of error.
 
 Carroll v. State,
 
 599 So.2d 1253 (Ala.Cr.App.1992), aff'd, 627 So.2d 874 (Ala.1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994);
 
 Dill v. State,
 
 600 So.2d 343 (Ala.Cr.App.1991), aff'd, 600 So.2d 372 (Ala.1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993);
 
 Kuenzel v. State,
 
 577 So.2d 474 (Ala.Cr.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991). Based on the foregoing, there is no plain error in the trial court’s instruction on reasonable doubt.”
 

 Smith v. State,
 
 756 So.2d 892, 922 (Ala.Crim.App.1997).
 
 See also Victor v. Nebraska,
 
 511 U.S. 1, 20, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (holding that an instruction that defines reasonable doubt as a substantial doubt is not unconstitutional when “substantial” refers to the existence of doubt as opposed to the magnitude of doubt).
 

 Unlike the instruction in
 
 Cage,
 
 the circuit court’s instruction in the present case did not require the jury to find an “actual substantial doubt,” and it did not require the jury to entertain “grave uncertainty” to acquit. In other words, the instruction did not elevate the standard of doubt necessary for an acquittal beyond that enunciated in
 
 In re Winship.
 
 Instead, the instruction correctly informed the jury that any doubt sufficient to warrant an acquittal cannot be based on conjecture or mere guesswork, i.e., the doubt had to be based on the evidence or lack thereof. (R. 978.);
 
 see Lee v. State,
 
 898 So.2d 790, 841 (Ala.Crim.App.2001) (upholding an instruction that informed the jury that “a doubt which would justify an acquittal must be an actual doubt, and not a mere guess or surmise or whim, and it’s not a forced doubt”);
 
 Maples v. State,
 
 758 So.2d 1, 65 (Ala.Crim.App.1999) (same).
 

 Because the circuit court’s instruction clearly conveyed the definition of reasonable doubt to the jury and did not imper-missibly elevate the level of doubt necessary for an acquittal, no error, much less plain error, occurred. Therefore, this issue does not entitle Vanpelt to any relief.
 

 Penalty-Phase Issues
 

 XVI.
 

 Vanpelt next argues that the circuit court and prosecutor erred by misinforming the jury that its verdict in the penalty phase was a recommendation. Specifically, Vanpelt asserts that the circuit court and the prosecutor violated the Supreme Court’s holding in
 
 Caldwell v. Mississippi,
 
 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), by minimizing the jury’s sense of responsibly when they misinformed the jury that its penalty-phase verdict is advisory.
 

 First, the circuit court and the prosecutor did not misinform the jury that its penalty-phase verdict is a recommendation. Under § 13A-5-46, Ala.Code 1975, the jury’s role in penalty phase of a capital case is to render an advisory verdict recommending a sentence to the circuit judge. It is the circuit judge who ultimately decides the capital defendant’s sentence, and, “[w]hile the jury’s recommendation concerning sentencing shall be given consideration, it is not binding upon the courts.” § 13A-5-47, Ala.Code 1975. Accordingly, the circuit court and the prosecutor did not misinform the jury that its penalty-phase verdict is a recommendation.
 

 
 *85
 
 Further, Alabama courts have repeatedly held that “the comments of the prosecutor and the instructions of the trial court accurately informing a jury of the extent of its sentencing authority and that its sentence verdict was ‘advisory1 and a ‘recommendation’ and that the trial court would make the final decision as to sentence does not violate
 
 Caldwell v. Mississippi” Kuenzel v. State,
 
 577 So.2d 474, 502 (Ala.Crim.App.1990) (quoting
 
 Martin v. State,
 
 548 So.2d 488, 494 (Ala.Crim.App.1988)).
 
 See also Brown v. State,
 
 11 So.3d 866 (Ala.Crim.App.2007);
 
 Harris v. State, 2
 
 So.3d 880 (Ala.Crim.App.2007);
 
 Deardorff v. State,
 
 6 So.3d 1205, 1233 (Ala.Crim.App.2004);
 
 Williams v. State,
 
 601 So.2d 1062, 1082 (Ala.Crim.App.1991);
 
 White v. State,
 
 587 So.2d 1218 (Ala.Crim.App.1990);
 
 Ex parte Hays,
 
 518 So.2d 768, 777 (Ala.1986). Such comments, without more, do not minimize the jury’s role and responsibility in sentencing and do not violate the Supreme Court’s holding in
 
 Caldwell.
 
 Therefore, this issue does not entitle Vanpelt to any relief.
 

 XVII.
 

 Vanpelt next argues that his death sentence violates the United States Supreme Court’s decision in
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Specifically, Vanpelt argues that his death sentence violates the Sixth and Fourteenth Amendments to the United States Constitution because the jury did not unanimously find that an aggravating circumstance existed and because the jury did not unanimously find that the aggravating circumstance outweighed the mitigating circumstances. (Vanpelt’s Brief at 107.)
 

 In
 
 Ring,
 
 the United States Supreme Court applied its earlier holding in
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to death-penalty cases and held that under the Sixth Amendment, a capital defendant is “entitled to a jury determination of any fact [other than a prior conviction] on which the legislature conditions an increase in their maximum punishment.”
 
 Ring,
 
 536 U.S. at 589, 600. In
 
 Ex parte Waldrop,
 
 859 So.2d 1181 (Ala.2002), the Alabama Supreme Court applied
 
 Ring
 
 to a similar situation and held:
 

 “[W]hen a defendant is found guilty of a capital offense, ‘any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentencing hearing.’ Ala.Code 1975, § 13A-5-45(e); see also Ala.Code 1975, § 13A-5-50 (‘The fact that a particular capital offense as defined in Section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence.’). This is known as ‘double-counting’ or ‘overlap,’ and Alabama courts ‘have repeatedly upheld death sentences where the only aggravating circumstance supporting the death sentence overlaps with an element of the capital offense.’
 
 Ex parte Trawick,
 
 698 So.2d 162, 178 (Ala.1997); see also
 
 Coral v. State,
 
 628 So.2d 954, 965 (Ala.Crim.App.1992).
 

 “Because the jury convicted Waldrop of two counts of murder during a robbery in the first degree, a violation of Ala.Code 1975, § 13A-5-40(a)(2), the statutory aggravating circumstance of committing a capital offense while engaged in the commission of a robbery, Ala.Code 1975, § 13A-5-49(4), was ‘proven beyond a reasonable doubt.’ Ala.Code 1975, § 13A-5-45(e); Ala.Code
 
 *86
 
 1975, § 13A-5-50. Only one aggravating circumstance must exist in order to impose a sentence of death. Ala.Code 1975, § 13A-5-45(f). Thus, in Wal-drop’s case, the jury, and not the trial judge, determined the existence of the ‘aggravating circumstance necessary for imposition of the death penalty.’
 
 Ring,
 
 536 U.S. at 609, 122 S.Ct. at 2443. Therefore, the findings reflected in the jury’s verdict alone exposed Waldrop to a range of punishment that had as its maximum the death penalty. This is all
 
 Ring
 
 and Apprendi require.”
 

 859 So.2d at 1188.
 
 [12]
 

 Like
 
 Waldrop,
 
 Vanpelt was convicted of a capital offense that has a corresponding aggravating circumstances, i.e., murder for pecuniary gain.
 
 See
 
 §§ 13A-5-40(a)(7), 13A-5-49(6), Ala.Code 1975. Accordingly, the jury’s verdict finding Vanpelt guilty of capital murder established that the jury unanimously found that an aggravating circumstance existed. Because the jury’s guilt-phase verdict established that the jury found a fact necessary to expose Van-pelt to a sentence of death, Vanpelt’s Sixth Amendment right to a jury was not violated.
 

 To the extent Vanpelt argues that the Supreme Court’s holding in
 
 Ring
 
 was violated because the jury did not unanimously find that the aggravating circumstance outweighed the mitigating circumstances, this argument is likewise without merit. In
 
 Waldrop,
 
 the Alabama Supreme Court addressed an identical issue and held:
 

 “The determination whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact or an element of the offense. Consequently,
 
 Ring
 
 and
 
 Apprendi
 
 do not require that a jury weigh the aggravating circumstances and the mitigating circumstances.”
 

 Id.
 
 at 1190. Because the balancing of the aggravating and mitigating circumstances, i.e., the sentencing determination itself, is not a finding of fact that was necessary to expose Vanpelt to a sentence of death, his death sentence does not violate
 
 Ring
 
 and
 
 Apprendi.
 
 Consequently, Vanpelt is not entitled to any relief on this issue.
 
 [13]
 

 XVIII.
 

 Vanpelt next argues that the circuit court erred in denying his motion to bar the imposition of the death penalty. Specifically, Vanpelt argues that the circuit court should have barred the imposition of a sentence of death for the following reasons: 1) Alabama’s death-penalty statute is overbroad and fails to narrow the class of murders eligible for a sentence of death; 2) there is a risk that he is innocent; and 3) Alabama’s death-penalty sentencing
 
 *87
 
 scheme is arbitrary and violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it leads to geographic and racial differences in its impact.
 

 Alabama courts have repeatedly addressed and rejected Vanpelt’s challenges to Alabama’s death-penalty statute.
 
 See Dunaway v. State,
 
 746 So.2d 1021, 1041 (Ala.Crim.App.1998);
 
 Johnson v. State,
 
 823 So.2d 1 (Ala.Crim.App.2001);
 
 McGowan v. State,
 
 990 So.2d 931, 996 (Ala.Crim.App.2003); Mash
 
 burn v. State,
 
 7 So.3d 453, 465 (Ala.Crim.App.2007);
 
 Sharifi v. State,
 
 993 So.2d 907, 938 (Ala.Crim.App.2008);
 
 Lewis v. State,
 
 24 So.3d 480, 533 (Ala.Crim.App.2006). In his brief to this court, Vanpelt has not provided more than four sentences in support of any of his arguments. Further, although he cites a few cases for general propositions of law, Vanpelt has not provided this court with any analysis regarding how those cases apply to him or how those cases render Alabama’s death-penalty scheme unconstitutional. Finally, Vanpelt makes a number of conclusory factual assertions; however, he has not provided this court with any factual support for these assertions.
 
 [14]
 
 In sum, Vanpelt’s cursory arguments have not provided this court with any reason, much less compelling reasons, to revisit the legion of cases upholding the constitutionality of Alabama’s death-penalty statutes. Consequently, Vanpelt is not entitled to any relief.
 

 XIX.
 

 Vanpelt next argues that the circuit court erred in sentencing him without a complete presentence report. Specifically, Vanpelt asserts that the presen-tence report failed to include the court-ordered forensic evaluation performed on him at the Taylor Hardin Secure Medical Facility (“Taylor Hardin”). Relying on
 
 Guthrie v. State,
 
 689 So.2d 935 (Ala.Crim.App.1996), Vanpelt asserts that this failure violated his constitutional rights.
 
 [15]
 
 There is no indication that Vanpelt objected to the contents of the presentence report; therefore, this court reviews this issue for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 In distinguishing
 
 Guthrie,
 
 this Court in
 
 Jackson v. State,
 
 791 So.2d 979 (Ala.Crim.App.2000), stated:
 

 “Jackson did not object to the presen-tence investigation report at the sentencing hearing; therefore, we may review this claim only for plain error.
 
 See
 
 Rule 45A, Ala.R.App.P.
 

 “In support of his argument, Jackson relies on
 
 Guthrie v. State,
 
 689 So.2d 935 (Ala.Cr.App.1996), aff'd, 689 So.2d 951 (Ala.), cert. denied, 522 U.S. 848, 118
 
 *88
 
 S.Ct. 135, 139 L.Ed.2d 84 (1997), in which this court reversed Guthrie’s sentence and remanded the case for the trial court ‘to reconsider Guthrie’s sentence with a sufficient presentence report.’ 689 So.2d at 947. In so doing, we stated:
 

 “ ‘This presentence report’s cursory and incomplete treatment of Guthrie troubles us, because it may have hamstrung the trial court’s consideration of the full mosaic of Guthrie’s background and circumstances before determining the proper sentence. As such, this presentence report risked foiling the purpose of § 13A-5-47(b).’
 

 “Guthrie,
 
 689 So.2d at 947. ‘The purpose of the presentence investigation report is to aid the sentencing judge in determining whether the jury’s advisory verdict is proper and if not, what the appropriate sentence should be.’
 
 Ex parte Hart,
 
 612 So.2d 536, 539 (Ala.1992), cert. denied, 508 U.S. 953, 113 S.Ct. 2450, 124 L.Ed.2d 666 (1993).
 

 “Unlike the court in
 
 Guthrie,
 
 the trial court in this case had the opportunity to consider the ‘full mosaic of [Jackson’s] background and circumstances’ before sentencing him. In
 
 Guthrie,
 
 we were concerned with the cursory presentence report because Guthrie had not presented any mitigating evidence during the sentencing hearings before the jury or the trial court and specifically instructed his attorney not to argue any mitigation other than the fact that his role in the crime was as an accomplice; because Guthrie’s personal and social history contained in the report had been taken from an interview that was conducted at least five years before his sentencing hearing and no attempt had been made to update that information for purposes of the presentence investigation; and because, although the report indicated that no psychological reports were available, the record showed that Guthrie had been incarcerated at Taylor Hardin Secure Medical Facility in 1988.
 

 “Although we agree with Jackson that the presentence report in this case was virtually identical to the youthful offender report prepared over a year before Jackson’s trial, and, like the report in
 
 Guthrie,
 
 indicated that no psychological reports were on file when, in fact, Jackson had been evaluated both at the Taylor Hardin Secure Medical Facility approximately six months before trial and by his own expert only a week before trial, we find that the deficiency in the report in this case does not cause the same problem as the deficiency in
 
 Guthrie.
 

 “In
 
 Guthrie,
 
 the court was faced with sentencing Guthrie without any current information on his background. Here, however, Jackson presented extensive mitigating evidence about his background and childhood, at both the sentencing hearing before the jury and before the trial court. In addition, the trial court had before it both Dr. Goffs and Dr. Smith’s psychological evaluations containing extensive information about Jackson’s life, his schooling, and his mental history. Finally, the trial court indicated in its sentencing order that it had considered this mitigating evidence in reaching its decision. Clearly, the trial court here was not ‘hamstrung’ into determining Jackson’s sentence without consideration of ‘the full mosaic’ of Jackson’s background and circumstances. See, e.g.,
 
 Wilson v. State,
 
 777 So.2d 856 (Ala.Cr.App.1999). Therefore, we find no error, plain or otherwise, as to this claim.”
 

 791 So.2d at 1033-34.
 
 See also Lee v. State,
 
 898 So.2d 790 (Ala.Crim.App.2001);
 
 Johnson v. State,
 
 820 So.2d 842 (Ala.Crim.App.2000).
 

 
 *89
 
 Like the court in
 
 Jackson,
 
 the circuit court in this case was not denied a full mosaic of Vanpelt’s background. During the penalty phase, Vanpelt presented extensive testimony by Dr. James Edward Crowder, a psychologist, regarding Van-pelt’s mental health. Further, Vanpelt presented testimony from his family members regarding his background and other possible mitigation. More importantly, the Taylor Hardin evaluation was part of the circuit court’s file and part of the record on appeal. (CR. 24-33.)
 

 Because the circuit court had the Taylor Hardin evaluation and was presented with extensive mitigation and mental-health evidence during the penalty phase of the trial, Vanpelt has not established that the failure to include the Taylor Hardin evaluation in the presentence report had any impact on the circuit court’s sentencing determination.
 
 Cf. Ex parte Brown,
 
 11 So.3d 933, 938 (Ala.2008) (citations omitted) (holding that plain error must have an “unfair prejudicial impact”). Therefore, Vanpelt is not entitled to any relief on this issue.
 

 XX.
 

 Vanpelt next argues that the circuit court erred in finding that an element of the capital offense was also an aggravating circumstance. Specifically, Vanpelt asserts that the court erred in double counting “murder for pecuniary gain” as both an element of the capital murder and an aggravating circumstance. This issue was not raised below; therefore, it is reviewed for plain error.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 Contrary to Vanpelt’s assertions, there is no constitutional or statutory prohibition against double counting certain circumstances as both an element of the offense and an aggravating circumstance.
 
 See
 
 § 13A-5-45(e), Ala.Code 1975 (providing that “any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing”). The United States Supreme Court, the Alabama Supreme Court, and this court have all upheld the practice of double counting.
 
 See Lowenfield v. Phelps,
 
 484 U.S. 231, 241-46, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (“The fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm.”);
 
 Tuilaepa v. California,
 
 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) (“The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both).”);
 
 Ex parte Kennedy,
 
 472 So.2d 1106, 1108 (Ala.1985) (rejecting a constitutional challenge to double counting);
 
 Brown v. State,
 
 11 So.3d 866 (Ala.Crim.App.2007);
 
 Harris v. State,
 
 2 So.3d 880 (Ala.Crim.App.2007);
 
 Jones v. State,
 
 946 So.2d 903, 928 (Ala.Crim.App.2006);
 
 Peraita v. State,
 
 897 So.2d 1161, 1220-21 (Ala.Crim.App.2003);
 
 Coral v. State,
 
 628 So.2d 954 (Ala.Crim.App.1992);
 
 Haney v. State,
 
 603 So.2d 368 (Ala.Crim.App.1991). Because double counting is constitutionally permitted and statutorily required, Vanpelt is not entitled to any relief on this issue. § 13A-5-45(e), Ala. Code 1975.
 

 XXI.
 

 Vanpelt next argues that evolving standards of decency have rendered Alabama’s method of execution—lethal injection—unconstitutional. (Vanpelt’s Brief at 119.)
 

 This court notes that Vanpelt’s entire argument consists of one paragraph and completely fails to offer any argument regarding current standards of decency. In fact, the only sentence contained in Van-
 
 *90
 
 pelt’s argument that appears to relate to lethal injection is his conclusory allegation that “[e]volving standards of decency have rendered lethal injection unconstitutional.” (Vanpelt’s Brief at 119.) Additionally, this court, in
 
 Saunders v. State,
 
 held that “lethal injection does not constitute per se cruel and unusual punishment.
 
 See e.g., McNabb v. State,
 
 991 So.2d 313 (Ala.Crim.App.2007), and cases cited therein.” 10 So.3d 53, 111 (Ala.Crim.App.2007);
 
 see also Baze v. Rees,
 
 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) (holding that lethal injection does not violate the Eighth Amendment);
 
 Ex parte Belisle,
 
 11 So.3d 323, 339 (Ala.2008) (holding that lethal injection is not unconstitutional).
 

 Because Vanpelt has failed to offer this court any basis upon which to hold that lethal injection is unconstitutional and because Vanpelt’s claim has been rejected by the United States Supreme Court, the Alabama Supreme Court, and this court, he is not entitled to any relief.
 

 XXII.
 

 Vanpelt next argues that prosecutorial misconduct denied him a fair and reliable sentencing hearing. Vanpelt did not object to the prosecutor’s conduct that he now complains of at trial; therefore, these issues are reviewed for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P.;
 
 See generally supra
 
 Section XIV (standard governing review of prosecutorial misconduct)
 

 A.
 

 Vanpelt first argues that the prosecutor improperly suggested to the jury that it could not consider mitigating evidence that had been presented in the penalty phase. Specifically, he argues that the prosecutor instructed the jury that it could not consider the mitigating evidence regarding his horrific childhood when the prosecutor made the following argument:
 

 “Ladies and gentlemen, this case is a cold, calculated, planned killing for money. That is all it is. We can talk about how bad somebody grew up, how bad they had it. We can always try to blame it on something else. That was close to a quarter of a century ago. The rest of his brothers and sisters grew up to be— you know, they have good jobs. The fact that he is not mean to his own kids shows he did not take the traits of his father. The fact that he worked shows that he did not take — steal like his father. He did not take his father’s traits. He sat and planned and schemed to kill for money.... There is no mitigating circumstance when you get in there and weigh this out.”
 

 (C. 1093-94.)
 

 It is well settled that the State has the burden in the penalty phase to disprove the existence of any mitigating circumstances presented by the defense.
 

 “A prosecutor as well as defense counsel has a right to present his impressions from the evidence, and [h]e may argue every legitimate inference from the evidence and may examine, collate, sift, and treat the evidence in his own way.
 
 Watson v. State,
 
 398 So.2d 320, 328 (Ala.Cr.App.1980), writ denied, 398 So.2d 332 (Ala.), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).
 
 Henderson v. State,
 
 584 So.2d 841, 856-57 (Ala.Crim.App.1988), remanded on other grounds, 585 So.2d 862 (Ala. 1991).”
 

 Sneed v. State,
 
 1 So.3d 104, 140 (Ala.Crim.App.2007) (internal quotation marks omitted). Further, “[a] prosecutor may present an argument to the jury regarding the appropriate weight to afford the mitigating factors offered by the defendant.”
 
 Malicoat v. Mullin,
 
 426 F.3d 1241, 1257 (10th Cir.2005).
 
 See also State v. Scott,
 
 286 Kan. 54, 183 P.3d 801, 844 (2008) (holding
 
 *91
 
 that a prosecutor may properly argue that mitigation should not be given much weight).
 

 When the comments are viewed in context, it is clear that the prosecutor did not argue that the jury could not consider Vanpelt’s childhood as a mitigating circumstance. Instead, the prosecutor argued that based on the facts of this case, this mitigating circumstance was entitled to little or no weight. Because the prosecutor may argue that certain mitigating circumstances should be given little weight, no error, much less plain error, resulted from the prosecutor’s comment.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 B.
 

 Vanpelt next argues that the prosecutor improperly suggested that his office had already determined that Vanpelt deserved to be sentenced to death. Specifically, Vanpelt challenges the following argument:
 

 “Ladies and gentlemen, if this case does not call for the death penalty, what does? ...
 

 “After you weigh it out, I ask you to return a recommendation, an advisory opinion for a verdict of the death penalty in this ease because this case calls for the death penalty. If there has ever been one that does, this case right here calls for it.”
 

 (R. 1094-95.) In rebuttal, the State argued:
 

 “I know that you understand the awesome responsibility that has been placed on your shoulders and your duty is very difficult. I want you to know that it is not easy and not without a lot of soul searching by the State of Alabama that we have come to you and ask you to make such an awesome decision. It is a difficult decision, but the law and the facts of this case — the judge is going to give you the law in just a few minutes— but they are there to guide you, to guide you to the correct recommendation.”
 

 (R. 1100.)
 

 Vanpelt argues that these comments by the prosecutor improperly implied to the jury that the prosecutor’s office had already decided that Vanpelt should be sentenced to death, and cites
 
 Guthrie v. State,
 
 616 So.2d 914 (Ala.Crim.App.1993), to support his argument that the penalty-phase of his trial should be reversed.
 

 In our adversarial system of criminal justice, a prosecutor seeking a sentence of death may properly argue to the jury that a death sentence is appropriate.
 
 See Hall v. State,
 
 820 So.2d 113, 143 (Ala.Crim.App.1999). On the other hand, it is impermissible for a prosecutor to urge the jury to ignore its penalty-phase role and simply rely on the fact that the State has already determined that death is the appropriate sentence.
 
 See Guthrie,
 
 616 So.2d at 931-32 (holding that a prosecutor’s statement that “‘[w]hen I first became involved in this case, from the very day, the State of Alabama, the law enforcement agencies and everybody agreed that this was a death penalty case, and we still stand on that position’ ” improperly “[led] the jury to believe that the whole governmental establishment had already determined that the sentence should be death and [invited] the jury to adopt the conclusion of others, ostensibly more qualified to make the determination, rather than deciding on its own”).
 

 When the prosecutor’s comments are viewed in context, it is clear that he was properly arguing in favor of a sentence of death and properly reminding the jury of the gravity of its penalty-phase role. For instance, in stating that, “if this case does not call for the death penalty, what does,” the prosecutor was properly
 
 *92
 
 arguing that a death sentence is appropriate and appealing to the jury to do justice.
 
 See Hall,
 
 820 So.2d at 143. Also, the prosecutor’s comment that his office does not seek a death sentence lightly was not an improper request for the jury to ignore its penalty-phase duty. Instead, this comment merely reminded the jury of the gravity of its penalty-phase decision by informing the jury that in making its penalty phase decision it has an awesome responsibility — one that the State does not lightly ask a jury to shoulder.
 
 Cf. Fox v. Ward,
 
 200 F.3d 1286, 1300 (10th Cir.2000) (holding that a “prosecutor[’s] [comment to] the jury that he did not undertake the decision to seek the death penalty lightly, and pointed to the different elements that went into making his decision[, was] a permissible line of commentary”).
 

 Because the prosecutor’s comments did not urge the jury to ignore its penalty-phase role, Vanpelt has not established that these comments were improper or that they so infected the trial with unfairness that Vanpelt was denied due process.
 
 See Darden v. Wainwright,
 
 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Therefore, Vanpelt has failed to show that plain error occurred and is not entitled to any relief.
 

 C.
 

 Vanpelt next argues that the cumulative effect of the individual instances of prose-cutorial misconduct denied him a fair trial and warrants reversal of his conviction.
 

 This court has scrupulously reviewed the prosecutor’s argument for errors. “Because we find that no single instance of the prosecutor’s conduct was improper, any claim that the alleged improper conduct had a cumulative prejudicial effect on [Vanpelt’s] trial is without merit.”
 
 Harris v. State,
 
 2 So.3d 880, 926 (Ala.Crim.App.2007). Therefore, Vanpelt is not entitled to any relief.
 

 XXIII.
 

 Vanpelt argues that the circuit court’s instructions in the penalty phase were erroneous for several reasons. After the circuit court gave its instructions in the penalty phase, defense counsel stated that he had no objections. Accordingly, this court reviews these issues for plain error only.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 “When reviewing a trial court’s jury instructions, we must view them as a whole, not in bits and pieces, and as a reasonable juror would have interpreted them.”
 
 Johnson v. State,
 
 820 So.2d 842, 874 (Ala.Crim.App.2000).
 

 “A trial court has broad discretion when formulating its jury instructions. See
 
 Williams v. State,
 
 611 So.2d 1119, 1123 (Ala.Cr.App.1992). Wben reviewing a trial court’s instructions, ‘“the court’s charge must be taken as a whole, and the portions challenged are not to be isolated therefrom or taken out of context, but rather considered together.” ’
 
 Self v. State,
 
 620 So.2d 110, 113 (Ala.Cr.App.1992) (quoting
 
 Porter v. State,
 
 520 So.2d 235, 237 (Ala.Cr.App.1987)); see also
 
 Beard v. State,
 
 612 So.2d 1335 (Ala.Cr.App.1992);
 
 Alexander v. State,
 
 601 So.2d 1130 (Ala.Cr.App.1992).”
 

 Williams v. State,
 
 795 So.2d 753, 780 (Ala.Crim.App.1999).
 

 A.
 

 First, Vanpelt argues the circuit court’s instructions on mitigating circumstances were erroneous because the court instructed the jury that they must “avoid the influence of any passion, prejudice, or any other arbitrary factor.” According to Vanpelt, this instruction erroneously caused the jury to believe that it could not
 
 *93
 
 consider mercy in its penalty-phase deliberations. Next, Vanpelt argues that the circuit court erred by reading the list of statutory mitigating circumstances to the jury and then instructing the jury that it could also consider as nonstatutory mitigation “any aspect of [Vanpelt’s] character or record and any of the circumstances of the offense.” (Vanpelt’s Brief at 101.) According to Vanpelt, this instruction prevented the jury from considering his abusive childhood.
 

 To the extent Vanpelt asserts that the circuit court erroneously instructed the jury not to consider passion, prejudice, or any other arbitrary factor, this argument is without merit. In
 
 California v. Brown,
 
 479 U.S. 538, 539, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), the United States Supreme Court upheld a jury instruction in the penalty phase of a capital trial that informed the jurors that they “must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.” This court has repeatedly held that a court does not err in the penalty phase of a capital trial when it instructs the jury that it should “avoid the influence of any passion, prejudice, or any other arbitrary factor.”
 
 [16]
 

 See Brown v. State,
 
 11 So.3d 866, 922 (Ala.Crim.App.2007);
 
 Ex parte Jefferson,
 
 473 So.2d 1110, n. 3 (Ala.1985) (“The ... jury ... was properly instructed to avoid the influence of passion, prejudice, or any other arbitrary factor....”);
 
 Reeves v. State,
 
 807 So.2d 18, 46 (Ala.Crim.App.2000) (“[T]he jury was properly instructed ... that its sentencing recommendation was not to be influenced by passion, prejudice, or any other arbitrary factor.”);
 
 Barber v. State,
 
 952 So.2d 393 (Ala.Crim.App.2005);
 
 Morrison v. State,
 
 500 So.2d 36 (Ala.Crim.App.1985). Therefore, the circuit court’s instruction was not error, much less plain error.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 To the extent Vanpelt argues that the circuit court erroneously instructed the jury regarding nonstatutory mitigating circumstances, this argument is likewise without merit. The court read the statutory mitigating circumstances and then gave the following instruction:
 

 “A mitigating circumstance does not have to be included in the list I have read to you in order for it to be considered by you. In addition to the mitigating circumstances previously specified that are mentioned in statutes in Alabama, mitigating circumstances shall include any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant offered as a basis for a sentence of life imprisonment without parole instead of death.
 

 “Mitigating circumstances considered by you should be based on the evidence you have heard.”
 

 (R. 1108.)
 

 Contrary to Vanpelt’s assertion, the circuit court’s instruction is a correct statement of the law and did not preclude the jury from considering Vanpelt’s abusive childhood as a mitigating factor.
 
 See
 
 § 13A-5-52, Ala.Code 1975;
 
 Eddings v. Oklahoma,
 
 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (quoting
 
 Lockett
 
 
 *94
 

 v. Ohio,
 
 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion)) (holding that the sentencer may not be “precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death”). Because the circuit court’s instruction was a correct statement of the law, no error, much less plain error, resulted from it.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 B.
 

 Vanpelt next argues that the circuit court’s instructions regarding the balancing process to be used in the penalty phase were erroneous. Specifically, he argues that the circuit court improperly failed to instruct the jury regarding what to do if it found that the aggravating circumstance and the mitigating circumstances were equally balanced.
 

 In
 
 Ex parte McNabb,
 
 the Alabama Supreme Court addressed a factually identical issue. 887 So.2d 998, 1002-04 (Ala.2004). Like the present case, the circuit court in
 
 McNabb
 
 instructed the jurors that if they found that the aggravating circumstances outweighed the mitigating circumstances they should vote for death, but if they found that the mitigating circumstances outweighed the aggravating circumstances they should vote for life in prison without parole.
 
 Id. See
 
 (R. 1113— 14) (Like
 
 McNabb,
 
 the circuit court here instructed the jurors that if they found that the aggravating circumstances outweighed the mitigating circumstances they must recommend that Vanpelt be sentenced to death, but if they found that the mitigating circumstances outweighed the aggravating circumstances they must recommend life in prison without parole.) Also like the present situation, the circuit court in
 
 McNabb
 
 did not specifically address what to do if the mitigating circumstances and the aggravating circumstances were equally balanced.
 
 Id.
 
 at 1004. Reviewing the circuit court’s instructions, the Alabama Supreme Court held that a circuit court’s failure to specifically address what to do if the mitigating circumstances and the aggravating circumstances were equally balanced did not constitute plain error.
 
 [17]
 

 Id. See also Calhoun v. State,
 
 932 So.2d 923, 973 (Ala.Crim.App.2005) (quoting
 
 McNabb,
 
 887 So.2d at 1004) (“[Although the court did not specifically instruct the jury what to do if it found the mitigating and aggravating circumstances equally balanced, we cannot conclude, considering the charge in its entirety, that the error ‘seriously affect[ed] the fairness, integrity or public reputation of [these] judicial proceedings,’
 
 Ex parte Davis,
 
 718 So.2d 1166, 1173-74 (Ala.1998), so as to require a reversal of the sentence.”);
 
 *95
 

 Brown v. State,
 
 11 So.3d 866, 924 (Ala.Crim.App.2007).
 

 Under the Alabama Supreme Court’s decision in
 
 McNabb,
 
 the circuit court’s failure to instruct the jury specifically regarding a situation in which the aggravating circumstances and the mitigating circumstances were equal does not constitute plain error. Therefore, Vanpelt is not entitled to any relief.
 

 C.
 

 Vanpelt next argues that the circuit court erroneously failed to instruct the jury on the use of victim-impact evidence in the penalty phase.
 

 In addressing a similar issue the United States Court of Appeals for the Eighth Circuit stated:
 

 “Johnson complains that the consideration of victim impact evidence in his case was unconstitutional because the jury was not directed how to consider the evidence. The Supreme Court of Arkansas has rejected this claim, citing the Supreme Court’s direction that ‘ “[a] capital sentencer need not be instructed on how to weigh any particular fact in the capital sentencing decision.” ’
 
 Kemp [v. State,
 
 324 Ark. 178], 919 S.W.2d [943] at 956 [ (1996) ] (quoting
 
 Tuilaepa [v. California],
 
 512 U.S. [967] 979, 114 S.Ct. 2630 [(1994)]). See
 
 Johnson I [v. State],
 
 [326 Ark. 430,] 934 S.W.2d [179] at 189 [(1996)] (citing Kemp). Particularly given the Court’s statement in
 
 Payne [v. Tennessee,
 
 501 U.S. 808 (1991) ] that ‘[t]here is no reason to treat [victim impact] evidence differently than other relevant evidence is treated,’ 501 U.S. at 827, 111 S.Ct. 2597, the state court’s decision to require no special instruction is consistent with established federal law. We further agree with the district court that nothing in the Supreme Court’s decisions regarding unconstitutionally vague statutes, e.g.,
 
 Papachristou v. City of Jacksonville,
 
 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972);
 
 Lanzetta v. New Jersey,
 
 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), suggests that a State may not allow victim impact evidence in the penalty phase of a capital case without a specific instruction to the jury about how to consider that evidence.”
 

 Johnson v. Norris,
 
 537 F.3d 840, 851 (8th Cir.2008). This holding is consistent with Alabama law. Alabama courts have not required circuit courts to sua sponte give a limiting instruction on the use of victim-impact evidence in the penalty phase of a capital-murder trial. Accordingly, Vanpelt has failed to establish that the circuit court’s failure to do so constitutes error.
 

 Moreover, even if the circuit court should have given an instruction regarding the jury’s consideration of victim impact, any error does not rise to the level of plain error. “ ‘To rise to the level of plain error, the claimed error must not only seriously affect a defendant’s “substantial rights,” but it must also
 
 have an unfair prejudicial impact on the jwy’s deliberations.’
 
 ”
 
 Ex parte Deardorff,
 
 6 So.3d 1235, 1244 (Ala.2008) (quoting
 
 Hyde v. State,
 
 778 So.2d 199, 209 (Ala.Crim.App.1998)(emphasis added)). The circuit court properly instructed the jury regarding the penalty-phase weighing process. (R. 1103-15.) The circuit court instructed the jury that the State had submitted one aggravating circumstance and that the jury could consider only that one aggravating circumstance in weighing the aggravating circumstances and the mitigating circumstances. (R. 1106);
 
 see Saunders v. State,
 
 10 So.3d 53, 102 (Ala.Crim.App.2007) (recognizing that “it is well settled that a jury is presumed to follow the trial court’s instructions”). The circuit court then properly instructed the jury
 
 *96
 
 regarding mitigating circumstances and the process for weighing the aggravating circumstances against the mitigating circumstances. (R. 1103-15.) Finally, the circuit court properly instructed the jury that it could not consider “passion, prejudice, consistency or any other arbitrary factor” in its deliberations. (R. 1111.)
 

 Based on the fact that the circuit court properly instructed the jury regarding the weighing process and the fact that it instructed the jury that it could consider only the one aggravating circumstance submitted by the State, any error in failing to instruct the jury regarding how to consider victim-impact evidence did not have “an unfair prejudicial impact on the jury’s deliberations.”
 
 Ex parte Deardorff,
 
 6 So.3d at 1244. Consequently, Vanpelt has failed to establish that the failure to give such an instruction rises to the level of plain error, and he is not entitled to any relief on this issue.
 

 D.
 

 Vanpelt also implies, without actually arguing, that the circuit court erroneously failed to reinstruct the jury on the definition of reasonable doubt during the penalty phase. In two sentences, Vanpelt asserts that the circuit court’s reference to its guilt-phase reasonable-doubt instruction “is not a practice condoned by this court.” (Vanpelt’s Brief at 104.)
 

 Initially, this court notes that the “Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course.”
 
 Victor v. Nebraska,
 
 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). Further, this court has “previously held that there is no plain error when a trial court, in the penalty phase of a capital trial, relies on a reasonable-doubt instruction it had given in the guilt phase of the proceedings.”
 
 Johnson v. State,
 
 820 So.2d 842, 875-76 (Ala.Crim.App.2000). Specifically, in
 
 Griffin v. State,
 
 this court held that the circuit court’s failure to reinstruct the jury on the definition of reasonable doubt during the penalty phase did not constitute plain error because the circuit court thoroughly and correctly instructed the jury on reasonable doubt in the guilt phase and little time had passed between the guilt phase and the penalty phase. 790 So.2d 267, 338 (Ala.Crim.App.1999), overruled on other grounds,
 
 Ex parte Griffin,
 
 790 So.2d 351 (Ala.2000).
 
 See also Johnson v. State,
 
 820 So.2d 842, 876 (Ala.Crim.App.2000) (same). This court has further explained that a circuit court’s reference to its earlier reasonable-doubt instruction is not improper because “[i]t is assumed that the jury will consider the previously given instructions along with those given in the supplemental charge.”
 
 Griffin,
 
 790 So.2d at 338.
 

 In the present case, the circuit court thoroughly and correctly instructed the jury on reasonable doubt during the guilt phase. (R. 978-79.) Further, only a short time, a weekend, had passed between the conclusion of the guilt phase and the beginning of the penalty phase. The circuit court reminded the jury of the instructions it had given during the guilt phase and thoroughly explained that the burden is on State to establish aggravating circumstances beyond a reasonable doubt. (R. 1103, 1105-06.) Under these circumstances, Vanpelt has failed to establish that the circuit court’s failure to reinstruct the jury on the definition of reasonable doubt constitutes plain error.
 
 [18]
 
 Therefore, he is not entitled to any relief.
 

 
 *97
 
 XXIV.
 

 Vanpelt finally argues that the cumulative effect of all the errors requires reversal of his conviction and sentence of death.
 

 “As the Alabama Supreme Court has so succinctly stated, the cumulative-error rule is as follows: ‘[W]hile, under the facts of a particular case, no single error among multiple errors may be sufficiently prejudicial to require reversal under Rule 45, [Ala. R.App. P.,] if the accumulated errors have “probably injuriously affected substantial rights of the parties,” then the cumulative effect of the errors may require reversal.’
 
 Ex parte Woods,
 
 789 So.2d 941, 942 n. 1 (Ala.2001) (quoting Rule 45, Ala. R.App. P.).”
 

 Brownfield v. State,
 
 44 So.3d 1, 33 (Ala.Crim.App.2007).
 

 Applying the standard set forth in
 
 Ex parte Woods,
 
 789 So.2d 941 (Ala.2001), this court has reviewed the alleged errors raised by Vanpelt and scrupulously searched the record for errors not raised on appeal. Rule 45A, Ala. R.App. P. After a thorough review of the record, this court is convinced that individually or cumulatively, no error entitles Vanpelt to relief.
 

 XXV.
 

 Last, as required by § 13A-5-53, Ala.Code 1975, this court must address the propriety of Vanpelt’s conviction for capital murder and his sentence of death. Van-pelt was indicted for murdering his wife, Sandra Vanpelt, for pecuniary gain, an offense defined as capital by § 13A-5-40(a)(7), Ala.Code 1975, and punishment by death by § 13A-5-49(6), Ala.Code 1975.
 

 The record reflects that Vanpelt’s sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor.
 
 See
 
 § 13A-5-53(b)(l), Ala. Code 1975.
 

 The circuit court found that the aggravating circumstance outweighed the mitigating circumstances. The court found as an aggravating circumstance that the murder was committed for pecuniary gain. § 13A-5-49(6), Ala.Code 1975. The circuit court found as a statutory mitigating circumstance that Vanpelt had no significant history of prior criminal activity.
 
 See
 
 § 13A-5-51, Ala.Code 1957. The circuit court found as nonstatutory mitigating circumstances that Vanpelt had a difficult family history and has an antisocial disorder. The circuit court weighed the aggravating circumstance against the mitigating circumstances and found that the aggravating circumstance outweighed the mitigating circumstances. This court agrees with the circuit court’s findings.
 

 Section 13A-5-53(b)(2), Ala.Code 1975, provides that this court must independently weigh the aggravating circumstances against the mitigating circumstances to determine if death was an appropriate sentence in this case. After an independent weighing, this court is convinced, as was the circuit court, that death is the appropriate sentence for Vanpelt’s crime.
 

 
 *98
 
 Vanpelt’s sentence of death is not disproportionate or excessive to sentences imposed in similar capital cases. This court notes that a sentence of death has been imposed in similar cases.
 
 See Smith v. State,
 
 908 So.2d 273 (Ala.Crim.App.2000) (murder for pecuniary gain);
 
 Sockwell v. State,
 
 675 So.2d 4 (Ala.Crim.App.1993) (murder for pecuniary gain);
 
 Parker v. State,
 
 587 So.2d 1072 (Ala.Crim.App.1991) (murder for pecuniary gain).
 

 Finally, this court has searched the rec-' ord for any error that may have adversely affected Vanpelt’s substantial rights and have found none.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 Accordingly, Vanpelt’s capital-murder conviction and his sentence of death are affirmed.
 

 AFFIRMED.
 

 WISE, P.J., and WELCH, KELLUM, and MAIN, JJ., concur.
 

 [1]
 

 . This case was originally assigned to another judge on the Court of Criminal Appeals; it was reassigned to Judge Windom on January 20, 2009.
 

 [2]
 

 . The indictment lists the appellant's name as "Vanpelt.” His name is also spelled "Van Pelt” and "VanPelt” in various portions of the record.
 

 [3]
 

 . Morrison testified that luminol is a “chemical agent [that] in the presence of hemoglobin and its derivatives — primarily hematin — he-matin will accelerate and cause it to illuminate very rapidly.” (R. 789.)
 

 [4]
 

 . To protect the anonymity of the jurors identified throughout this opinion, this court will use the jurors' initials. See Rule 52, Ala. R.App. P.
 

 [5]
 

 . Vanpelt's entire argument in support of this issue is one sentence long.
 

 [6]
 

 . The record shows that when M.B. named the offense the record contains the word "inaudible."
 

 [7]
 

 . This court notes that the insurance application that bears Vanpelt’s signature contains the following statement: "I have received the Conditional Receipt if money was submitted with this application. I have read the Conditional Receipt and agree to its terms, conditions, and limits. They have been fully explained to me by the agent or broker.” (C.R. 330.)
 

 [8]
 

 . “ ‘[T]he use of nuclear DNA analysis as a forensic tool has been found to be scientifically reliable by the scientific community for more than a decade.'
 
 United States v. Beverly,
 
 369 F.3d 516, 528 (6th Cir.2004).”
 
 Adams v. Bradshaw,
 
 484 F.Supp.2d 753, 791-92 (N.D.Ohio 2007).
 

 [9]
 

 . This court notes that the DNA evidence was not pivotal to the State's case. The forensic expert who collected the samples, Roger Morrison, described the blood samples as a "very minimal amount” (R. 781.) Morrison further stated that the blood was collected from the Vanpelts' mobile home and he could not say how long the blood had been there. (R. 781.) Moreover, some of the samples collected were never matched to any individual. Further, defense counsel spent virtually his entire cross-examination questioning Bass as to why vaginal swabs collected from Sandra were not tested in his laboratory. Based on the foregoing, the DNA and statistical evidence was not pivotal to the State's case and remand pursuant to
 
 Simmons v. State,
 
 797 So.2d 1134 (Ala.Crim.App.1999), is not required.
 
 Id.
 
 (remanded for a DNA hearing because DNA evidence was pivotal — victim’s DNA had been found on the defendant's clothing).
 

 [10]
 

 . In
 
 Melendez-Diaz v. Massachusetts,
 
 557 U.S. 305, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009), the United States Supreme Court recently held that the admission of a laboratory analyst’s certificate indicating that a substance was cocaine violated the defendant’s right to confront his accusers.
 

 [11]
 

 . Rule 9.3(a), Ala. R.Crim. P., states:
 

 "Prior to or during any proceeding, the court, on its own motion or at the request of any party, may exclude witnesses from the courtroom and direct them not to communicate with each other, or with anyone other than the attorneys in the case, concerning any testimony until all witnesses have been released by the court."
 

 [12]
 

 . In his brief, Vanpelt asserts that the Alabama Supreme Court’s holding in
 
 Waldrop
 
 that the jury’s guilt-phase verdict establishes that the jury found an aggravating circumstance impermissibly "changed the legal effect of the jury’s first phase verdict [and] eased the State’s” penalty phase burden of proof. (Vanpelt’s Brief at 107-08.) Contrary to Vanpelt's assertion, the Alabama Supreme Court did not change the legal effect of the jury's guilt-phase verdict; instead, it merely applied the statutory law that was already in effect.
 
 See
 
 § 13A-5-45(e), Ala.Code 1975 (providing that "any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing”). Therefore, this argument is factually erroneous and without merit.
 

 [13]
 

 . Vanpelt makes several other claims challenging the Supreme Court's holding in
 
 Ex parte Waldrop.
 
 However, this Court is bound by the decisions of the Alabama Supreme Court and has no authority to modify those decisions.
 
 See §
 
 12-3-16, Ala.Code 1975.
 

 [14]
 

 . For instance, Vanpelt asserts that Alabama's death-penalty scheme results in geographic and racial discrimination. He, however, has not provided this court with any factual support for these assertions. Additionally, Vanpelt, who is Caucasian, has failed to explain how racial discrimination infected his penalty-phase proceedings. (C.R. 25.)
 

 [15]
 

 . To the extent Vanpelt implies that the pre-sentence report is incomplete for reasons other than the failure to include the forensic evaluation, this court notes that the report states that the probation-and-parole officer visited Vanpelt in jail and gave him a questionnaire to complete. (Supp. R. 30.) The report further states that the writer returned to the jail the next week and “Vanpelt gave said questionnaire to this writer and stated that he refused to provide the requested information.” (Supp. R. 30.) If the presentence report was incomplete, it was because Van-pelt refused to cooperate with the probation- and-parole officer. Accordingly, any additional incompleteness was invited by Vanpelt.
 
 Snyder v. State,
 
 893 So.2d 488, 518 (Ala.Crim.App.2003) ("The doctrine of invited error applies to death-penalty cases and operates to waive any error unless the error rises to the level of plain error.”).
 

 [16]
 

 . To the extent Vanpelt implies that he was entitled an instruction regarding mercy, “it is well settled in Alabama that ‘[a] capital defendant is not automatically entitled to a mercy instruction.’”
 
 Brown v. State,
 
 11 So.3d 866, 921 (Ala.Crim.App.2007) (quoting
 
 Perkins v. State,
 
 808 So.2d 1041, 1134-35 (Ala.Crim. App.1999), vacated on other grounds,
 
 Perkins v. Alabama,
 
 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002), quoting in turn,
 
 Boyd v. State,
 
 715 So.2d 825, 846 (Ala.Crim.App.(1997)). Accordingly, there was no error in this regard.
 

 [17]
 

 . Vanpelt cites the Alabama Supreme Court's holding in
 
 Ex parte Bryant,
 
 951 So.2d 724 (Ala.2002), to support his assertion that the circuit court’s failure to instruct the jury regarding what to do if the mitigating and aggravating circumstances are equal constitutes plain error. (Vanpelt’s Brief at 102-03). Contrary to Vanpelt’s assertions, the Alabama Supreme Court's decision in
 
 Ex parte Bryant
 
 did not hinge on the circuit court’s failure to instruct the jury regarding the decision process when the mitigation and aggravation are equal.
 
 Id.
 
 at 730. Instead, the Supreme Court reversed Bryant’s death sentence and remanded for a new penalty phase because the circuit court’s instructions allowed the jury to recommend a sentence of death even if the jury did not find an aggravating circumstance.
 
 Id.
 
 Because the circuit court’s instructions in this case did not allow the jury to recommend a sentence of death without first finding that an aggravating circumstance existed,
 
 Ex parte Bryant
 
 is not applicable. (R. 1106) ("If you should find that no aggravating circumstance had been proven beyond a reasonable doubt then you must return a verdict recommending that the defendant’s punishment be life in prison without parole.”)
 

 [18]
 

 . This court also notes that the jury's guilt-phase verdict establishes that it unanimously found beyond a reasonable doubt the aggravating circumstance submitted by the State.
 
 *97
 

 See Ex parte Waldrop,
 
 859 So.2d 1181, 1187— 88 (Ala.2002); § 13A-5-45(e), Ala.Code 1975 (providing that “any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing”). Because the guilt-phase verdict established that the jury unanimously found that the State had proved beyond a reasonable doubt that the murder was for pecuniary gain, the circuit court’s failure to reinstruct the jury on reasonable doubt in the penalty phase could not have had "an unfair prejudicial impact on the jury's deliberations.”
 
 Ex parte Brown,
 
 11 So.3d 933, 938 (Ala.2008) (citations and quotations omitted). Therefore, Vanpelt cannot establish that the circuit court’s failure to redefine reasonable doubt constitutes plain error.